**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Leonard FAYMORE,**
**Defendant-Appellant.**

**No. 83–3010.**

United States Court of Appeals,
Sixth Circuit.

Argued May 4, 1984.

Decided June 6, 1984.

As Amended July 5, 1984.

Certiorari Denied Oct. 1, 1984.
See 105 S.Ct. 213.

Keith A. Suek (argued), Avon Lake, Ohio, Leonard Faymore, pro se, for defendant-appellant.

Ralph Cascarilla, Asst. U.S. Atty. (argued), Cleveland, Ohio, for the U.S.

Before LIVELY, Chief Judge, JONES, Circuit Judge, and TIMBERS, Senior Circuit Judge.[*]

---

[*] The Honorable William H. Timbers, Senior Circuit Judge, United States Court of Appeals for the Second Circuit, sitting by designation.

NATHANIEL R. JONES, Circuit Judge.

This case is currently before the Court upon Leonard F. Faymore's (Faymore's) appeal from a jury verdict finding him guilty of eleven counts of the unlawful possession with intent to distribute various controlled substances in violation of 21 U.S.C. § 841(a)(1) and one count of the use of a dangerous weapon against Drug Enforcement Administration (DEA) agents in the course of their official duties in violation of 18 U.S.C. §§ 111, 114. On appeal, Faymore alleges twelve assignments of error. Because we find none of those assignments meritorious, we affirm appellant's convictions.

Appellant Faymore was graduated from the College of Osteopathic Medicine and Surgery in Des Moines, Iowa. In 1968, he began working at the Doctors Clinic and eventually purchased the facility. In the 1970's, Faymore operated at the Clinic a Drug Dependency Program. The Clinic received a DEA Certificate of Registration to dispense controlled substances. In 1980 and 1981, however, customers flocked to the Clinic, often spending from $200 to $300 for "prescriptions" of controlled substances. Faymore received a $10 fee on each prescription for his "defense fund."

On December 7, 1982, the Lorain County Common Pleas Court issued an order which abated the public nuisance at the Doctor's Clinic and prohibited Faymore from practicing medicine. The State of Ohio Medical Board as well revoked Faymore's license to practice medicine. On December 11, 1981, the DEA suspended Faymore's Certificate of Registration. The DEA then began an undercover operation to arrange to sell Faymore large quantities of Quaaludes.

On June 11, 1981, Julio DeLeon, an agent of Faymore, asked Theresa Bennett, a confidential government informant, if she knew of a source of Quaaludes. Bennett introduced DeLeon to DEA agent F. Ray Price. In a recorded conversation, DeLeon indicated that he worked for Faymore and that his "doctor friend" could arrange the sale. DeLeon instructed Price to use the code name "white shoes" to describe the

operation. Agent Price phoned DeLeon several times using the "white shoes" code.

On July 23, 1982, Bennett traveled to Faymore's residence. Faymore indicated on tape his desire to purchase a large quantity of drugs. Faymore also told Bennett that he would be interested in meeting her drug contact. On July 29, 1982, Bennett informed Faymore that her drug contact had materialized. Faymore requested Bennett to bring her "friend" to his residence. After Price and Bennett arrived at Faymore's residence, Faymore searched Price and then agreed to purchase 1,000 Quaaludes for $2,500. On tape, Faymore told Price that if the latter was in fact a police officer, he would only lose a couple thousand dollars and could contend in his defense that he was only playing with the Government and had no intention of selling the pills. Faymore told Price to call him when he had secured the pills.

On August 11, 1982, Price met Faymore at the Doctors Clinic and showed him 1,000 Quaaludes. Faymore indicated that he would bring the money the next day and asked Price if he would like to purchase any of the Talwin tablets hidden in the Clinic. During the conversation, Faymore confirmed that he was the "doctor friend" of whom DeLeon spoke. Faymore also claimed to have prescribed over one million units of controlled substance and asked Price if he could secure the Schedule II drug, Dilaudids. On August 12, 1982, in a recorded meeting, Price sold Faymore 1,000 Quaaludes for $2,500. Later that day, Price negotiated with Faymore an additional sale of 20,000 Quaaludes. Faymore stated that he could sell 5,000 Talwins and that he reserved 2,200 Talwins in order to make a deal with the government. On August 13, 1982, Price again met Faymore and agreed to sell 18,000 Quaaludes for $10,-000, 7,200 Talwins and 7,200 PBZ's. During this recorded meeting, Virgil Fluker arrived, tendered $15,000 to Faymore and agreed to call later that afternoon. After Fluker left, Faymore and Price agreed to meet one hour later at a bus turn-around.

At the bus turn-around, the exchange was completed. Price then drew his service revolver and attempted to place Faymore under arrest. After a struggle, the weapon discharged injuring Faymore's right ear. Faymore however managed to gain possession of the gun from Price and drove away at high speed. Special agent Magoch and investigator Krebs chased Faymore. At one point in the high-speed chase, Faymore swerved his car into the agents' path. The agents however eventually captured Faymore and placed him under arrest.

During trial, Faymore claimed that he had offered Price a $100,000 reward for uncovering a DEA conspiracy against him. In search of that reward, Faymore testified, agent Price sold him DEA files and narcotics seized earlier by the DEA from the Clinic. Faymore's defense was that he and Price agreed to the sale in an effort to embarrass the DEA by crossing up two of its investigative teams. The jury, however, did not credit Faymore's testimony and rejected his defense. Faymore was convicted of all charges and now appeals those convictions to this Court.

■ Appellant contends that the imposition of consecutive sentences violated the Double Jeopardy Clause. Faymore was sentenced to a total of 40 years imprisonment on the twelve counts. The double jeopardy clause protects a defendant from multiple punishments for the same offense. *Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). In order to determine whether Faymore was convicted and sentenced more than once for the same offense, we must decide "[i]f each requires proof of a fact that the other does not." *Illinois v. Vitale*, 447 U.S. 410, 416, 100 S.Ct. 2260, 2265, 65 L.Ed.2d 228 (1980); *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). The Double Jeopardy Clause is not violated even where the prosecution relies upon a "substantial overlap in the proof offered to establish the crimes." *Iannelli v. United States*, 420 U.S. 770, 785, 95 S.Ct. 1284, 1293, 43 L.Ed.2d 616 (1975). A single act

or transaction, moreover, may produce distinct offenses under separate criminal statutes. *Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981).

■ Faymore's drug convictions were entered with respect to multiple counts under one criminal statute. In *United States v. Finazzo*, 704 F.2d 300 (6th Cir.1983), this Court held that the "question of whether separate punishments may be imposed [under the same statute] is primarily one of Congressional intent." Where Congress intended to provide multiple sentences, the double jeopardy clause places no restraint upon a court's power to impose such sentences. *Albernaz*, 450 U.S. at 340, 101 S.Ct. at 1143.

■ We must determine, therefore, whether Congress intended to provide multiple punishments under the Comprehensive Drug Abuse and Control Act of 1970, 21 U.S.C. § 801 *et seq*. Faymore contends that "possession with intent to distribute" under § 841(a)(1) creates *one* punishable offense. In *United States v. Davis*, 656 F.2d 153 (5th Cir.1981), *cert. denied*, 456 U.S. 930, 102 S.Ct. 1979, 72 L.Ed.2d 446 (1982), however, the Fifth Circuit held that "Congress intended, in enacting 21 U.S.C. § 841, to provide trial judges with maximum flexibility in sentencing, and therefore intended to permit punishment for possession of each controlled substance." Moreover, in *United States v. McDonald*, 692 F.2d 376 (5th Cir.), *cert. denied*, 460 U.S. 1073, 103 S.Ct. 1531, 75 L.Ed.2d 952 (1983), the Fifth Circuit concluded that separate physical deliveries of a controlled substance constituted separate criminal acts under the Comprehensive Drug Abuse Prevention and Control Act of 1970 for which consecutive punishments were legitimate. Although we have not addressed the precise issue before us, this Court in *United States v. Pope*, 561 F.2d 663 (6th Cir.1977) held that the simultaneous possession of two different controlled substances in violation of § 841(a)(1) amounted to separate offenses for purposes of indictment and sentencing. Where as here the defendant is convicted of more than a sin-

gle sale of one controlled substance under § 841(a)(1), compare *United States v. Merlino*, 595 F.2d 1016 (5th Cir.1979), *cert. denied*, 444 U.S. 1071, 100 S.Ct. 1014, 62 L.Ed.2d 752 (1980), the double jeopardy clause does not prohibit the district court from imposing consecutive sentences.

▮ Faymore contends in the alternative that the possession with intent to distribute counts should have merged into the lesser included offense of possession. Possession of a controlled substance is a lesser included offense within possession with intent to distribute. *United States v. Wade*, 502 F.2d 144 (6th Cir.1974). While a charge of possession with intent to distribute based on a single act must merge into a distribution charge for sentencing purposes, see *United States v. Stevens*, 521 F.2d 334 (6th Cir.1975), multiple acts involving multiple controlled substances are not so-merged. In the case before us, Faymore was charged and convicted of separate counts, each of which represents a distinct criminal act or a distinct substance. Although, as Faymore contends, the government produced no hard evidence of an actual delivery of controlled substances, the intent to distribute can be inferred by the jury from circumstantial evidence of possession of large quantities, see *United States v. Giles*, 536 F.2d 136, 141 (6th Cir. 1976), or an estimated street value of the drug. See *United States v. Green*, 548 F.2d 1261 (6th Cir.1977). The jury, thus, could have properly inferred from Faymore's possession of a large quantity of drugs his intent to distribute. Under the applicable law in this Circuit, therefore, we conclude that Faymore's convictions and sentences do not violate the Double Jeopardy Clause.

▮ Faymore further contends that the district court erred in its entrapment instructions because those instructions impermissibly placed upon him the burden of proving entrapment. Where the facts are undisputed or the government has presented no evidence from which a reasonable juror could find "predisposition," the defense of entrapment may be found as a matter of law; otherwise, that defense is a question of fact which must be submitted to the jury. *United States v. Grimes*, 438 F.2d 391 (6th Cir.1971), *cert. denied*, 402 U.S. 989, 91 S.Ct. 1684, 29 L.Ed.2d 155 (1972). In the case before us, the fact of Faymore's predisposition was disputed and thus properly presented to the jury. The Court entered an initial jury charge and then, upon the *prosecutor's* request, decided to recall the jury, one-half hour into its deliberations to offer a curative charge. In a promptly curative manner, the Court instructed the jury:

> Where a person has no previous intent or purpose to violate the law, but is induced or persuaded by law enforcement officers or their agents to commit a crime, he may be a victim of entrapment.

The court then charged the jury that the government had the burden of proving beyond a reasonable doubt Faymore's predisposition:

> If the evidence in this case should leave you with a reasonable doubt as to whether Dr. Faymore had the previous intent or purpose of predisposition to commit a narcotic law violation ... and did so only because he was induced or persuaded by some officer or agent of the Government, then in that event you must find Dr. Faymore not guilty on those counts.

The defense entered no objections to these instructions. The curative charge moreover was entirely consistent with Supreme Court and Sixth Circuit precedent. See *Sorrells v. United States*, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932); *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); *Sherman v. United States*, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); *United States v. Hodge*, 539 F.2d 898 (6th Cir.1976); *United States v. Ambrose*, 483 F.2d 742, (6th Cir. 1973).

▮ Even if defense counsel had properly objected, the trial court's curative charge, thus, clearly informed the jury that the government properly bears the burden of proving guilt beyond a reasonable doubt. Any mistake in the initial charge was

quickly corrected, informing the jury of the proper standard by which to adjudge Faymore's guilt. Viewing the instructions as we must in the "context of the overall charge," see *Cupp v. Naughten*, 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973), we find no reversible error.

Faymore also argues that his due process rights were violated by the testimony of government witness Theresa Bennett. He relies upon *United States v. Guerrero*, 650 F.2d 728 (5th Cir.1981) for the proposition that Bennett's testimony should have been excluded because it provided prejudicial evidence of Faymore's extrinsic acts.

In the case before us, however, Bennett's testimony was not admitted as evidence of extrinsic acts. Bennett testified rather that she received instructions from DeLeon to contact Faymore in order to secure controlled substances. She recounted her meetings with DEA agents and Faymore in which she attempted to arrange a drug purchase. The government, in an effort to establish a foundation for Bennett's involvement with Faymore and her credibility, inquired about her prior personal history with narcotics. Bennett stated that she was psychologically dependent upon drugs, that the agents gave her money and that the government promised to aid her incarcerated husband. The government thereby questioned the credibility of its own witness.

■ Federal Rule of Evidence 607 provides: "The credibility of a witness may be attacked by any party, including the party calling him." See *United States v. Bryant*, 461 F.2d 912 (6th Cir.1972). The district court did not err, therefore, in allowing the government to explore Bennett's prior involvement with narcotics in its direct examination.

■ Faymore also argues that he was denied a sufficient opportunity to cross-examine Bennett. Defense counsel must be afforded an ample opportunity to test the credibility and veracity of adverse witnesses. *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); Fed.

R.Evid. 611(b). The district court, however, must be afforded wide discretion to restrict the scope of cross-examination. *United States v. Jackson*, 576 F.2d 46 (5th Cir.1978). The district court in the instant case only restricted the scope of cross-examination on two occasions: Faymore's counsel was interrupted once when he asked a repititious question (T. 168) and another time when he asked an unintelligible question (T. 179). The district court, otherwise, granted Faymore ample opportunity to cross-examine Bennett. That court, therefore, did not infringe upon Faymore's Sixth Amendment right to effective cross-examination.

■ Faymore further contends that the district court erred in denying his Rule 29 Motion for Acquittal. Federal Rule of Criminal Procedure 29(a) requires the district court on proper motion to "order the entry of a judgment of acquittal ... if the evidence is insufficient to sustain a conviction of such offense or offenses." In determining whether Faymore's conviction was supported by sufficient evidence we must view the evidence in the light most favorable to the government. *United States v. Glasser*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). In that light, the government clearly presented substantial and competent evidence from which a jury could have found Faymore guilty of the offenses charged. See *United States v. Green*, 548 F.2d 1261 (6th Cir.1977).

■ Yet, even if sufficient evidence did not support these verdicts, Faymore forfeited his right to challenge that sufficiency. Absent a manifest miscarriage of justice, we are unable to review the district court's denial of a Rule 29 Motion where the defendant did not renew that Motion at the close of *all* of the evidence. *United States v. Van Dyke*, 605 F.2d 220 (6th Cir.1979), *cert. denied*, 444 U.S. 994, 100 S.Ct. 529, 62 L.Ed.2d 425 (1979). Thus, Faymore's current claim is barred by his failure to renew his Rule 29 Motion.

■ Faymore next argues that the district court erred in admitting evidence of a

conversation between agent Price and De-Leon as "double hearsay." We disagree. Federal Rule of Evidence 801(d)(2) renders non-hearsay a "statement by a person authorized by [a party-opponent] to make a statement concerning the subject" or "a statement by [a party-opponent's] agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship." The conversation between Price and De-Leon was subsequently adopted by Faymore when he used the code name "white shoes" and acknowledged that he was the "doctor" to whom DeLeon referred. The district court, therefore, did not abuse its discretion in admitting Price's testimony under Fed.R.Evid. 801(d)(2).

■■■ Faymore contends that the district court erred in refusing to allow him to cross-examine Investigator Krebs about an allegedly prior inconsistent statement concerning DEA procedures. Out of the hearing of the jury, the district court examined the evidence that Krebs offered a contradictory statement at an administrative hearing before the Ohio State Medical Board. We are convinced that the district court, therefore, was well within its discretion when it decided after thorough examination that the statements were not inconsistent.

■■■ Faymore also argues that the district court erred in admitting the testimony of witnesses Baker, Fluker, and Borgia about his character. Faymore does not assert any examples of such character evidence, but he would not prevail even if he could assert such examples. Federal Rule of Evidence 404(b) allows the introduction of character evidence to prove "intent". By Faymore's admission, his intent or predisposition to commit offenses charged was a central issue in the case. The entrapment defense unfortunately requires evidence of the defendant's character or disposition to commit the offenses. See *Sorrells*, 287 U.S. at 452, 53 S.Ct. at 216; *United States v. Cooper*, 321 F.2d 456 (6th Cir.1963). In this particular case, therefore, the district court did not err in allow-

ing evidence of Faymore's character and reputation.

Faymore also contends that the district court erred in admitting Investigator Hempstreet's testimony that Regulation 21 CFR § 1301.74(d) requires distribution of controlled substances only upon the written request of the recipient. That testimony was probative of Faymore's earlier statement that the drugs he distributed were routinely delivered on an unsolicited basis. The district court, therefore, was well within its discretion when it allowed such evidence. *See* Fed.R.Evid. 403.

■■■ Faymore next argues that the district court inaccurately instructed the jury on the elements of 18 U.S.C. §§ 111 and 114 violations. The defendant was charged under § 111, which provides:

whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in Section 1114 of this title while engaged in or an account of the performance of his official duties.

Faymore contends that his use of an automobile to impede the agent's progress during a high-speed chase did not constitute an "assault". Because an assault can be performed without physical contact or serious bodily injury, see *United States v. Bamberger*, 452 F.2d 696 (2d Cir.), *cert. denied*, 405 U.S. 1043, 92 S.Ct. 1326, 31 L.Ed.2d 585 (1971), we conclude that Faymore's acts in this case were sufficient to support the jury's finding of an "assault".

■■■ Faymore also argues that the district court erred in denying his Motion for a Continuance. The decision to grant a continuance is within the sound discretion of the district court. *United States v. Van Dyke*, 605 F.2d 220 (6th Cir.1979), *cert. denied*, 444 U.S. 994, 100 S.Ct. 529, 62 L.Ed.2d 425 (1980). Where as here trial was held within the time periods established in the Speedy Trial Act, 18 U.S.C. § 3161(c)(1)(2) and the defendant had ample opportunity to prepare his defense, the district court did not abuse its discretion.

Faymore further contends that, by virtue of the fact that he was licensed to practice medicine in New Mexico and Pennsylvania, he had the legal right to possess controlled substances. The parties stipulated, however, that Faymore lost his Ohio Pharmacy license, his certificate to practice medicine in Ohio and his DEA Certificate on or before January 15, 1982. After that date, therefore, Faymore had no legal right to possess the substances which are the subject of this appeal.

Faymore finally contends that the district court erred in improperly upholding a prosecutorial objection during his closing argument. During that argument, Faymore's counsel employed a legal concept taken from civil trials to inform the jury about criminal law burdens of proof. The district court properly stated that instructing the jury about legal concepts was the Court's role.

We, therefore, find no merit to any of Faymore's assignments of error. Accordingly, the judgments entered by the District Court are hereby AFFIRMED.