815 F.2d 81
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Steven A. SPENCER, Defendant-Appellant.
 No. 86-5154.
 United States Court of Appeals, Sixth Circuit.
 Jan. 14, 1987.
 
 1
 Before KRUPANSKY and RYAN, Circuit Judges, and HULL, District Judge.*
 
 
 2
 HULL, District Judge.
 
 
 3
 Defendant-appellant Steven A. Spencer was indicted by the Federal Grand Jury for the Eastern District of Kentucky at Covington and charged with aiding and abetting Anthony Jerome Clardy in the knowing and intentional possession of 168.54 grams of cocaine, a Schedule II narcotic, with intent to distribute it, in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2. On October 21, 1985, while co-defendant Clardy was a fugitive, Spencer waived his right to a jury and came to trial before the Honorable William O. Bertlesman. Judge Bertlesman found that the United States had failed to prove actual or constructive possession of cocaine on Spencer's part but that there was sufficient evidence to convict him of aiding and abetting Clardy in the possession with intent to distribute a controlled substance. In appealing this conviction, Spencer first contends that the district court erred in convicting him of aiding and abetting the possession of cocaine in the absence of any proof of either actual or constructive possession of the substance. His next contention is that there was insufficient evidence to establish beyond a reasonable doubt that he aided or abetted in the possession of cocaine and no evidence at all that he aided or abetted in the intent to distribute this substance. For the reasons which follow, we affirm.
 
 
 4
 On July 21, 1985, Anthony J. Clardy, who was on probation for cocaine abuse and who had been working as a laborer at a company called Hillman Fastener, invited his long-term friend Steven A. Spencer to accompany him on a trip to Miami, Florida. As a birthday present to Spencer, and because Clardy had just received a large check for severance pay from his job, Clardy was to make all the arrangements and pay Spencer's expenses. The two flew to Miami the next day using tickets in the names of Joe and Berry Woods. They checked into a two-bedroom suite at the Hyatt Regency. Because a hurricane was in the vicinity, Spencer stayed in the suite for the two days they were in Miami, but Clardy came and went on unspecified business at least four times. At around 4:30 in the morning of July 24, Clardy woke Spencer and told him they were returning to Cincinnati right away. They packed in haste and a pair of Spencer's shoes were put in one of Clardy's two suitcases. They rushed to the airport by taxi and picked up two tickets Clardy had reserved in the names of Mark and Jason Williams. They were to change planes in Atlanta.
 
 
 5
 At the Atlanta airport, detective Terry Toles of the Atlanta drug detection unit, was monitoring flights from southern Florida. He observed Spencer, who appeared to be alone, arrive on the Miami flight and request information for a connecting flight to Cincinnati. Toles was close enough to see the name "Williams" on the tickets in Spencer's hand. Various subtle cues, such as the fact that Spencer was wearing dark sunglasses at 6:15 in the morning, made detective Toles suspicious. He watched Spencer and noted that he was joined by Clardy for the connecting flight. A check with the Delta computer revealed that a Mark and Jason Williams had purchased their tickets together in Miami and had sat together on the plane. Their reservation record listed a callback telephone number with a contact named John Daniels. Detective Toles called the Daniels' number and found that it belonged to some people named Green who had no knowledge of Mark and Jason Williams. Detective Toles alerted the Greater Cincinnati Airport that two black males who were possible drug couriers were arriving on the Delta flight.
 
 
 6
 Sergeant Kerry Curry and Lieutenant Joe Weil of the Greater Cincinnati Airport police arranged for surveillance of Spencer and Clardy upon their arrival. Observation and video tape surveillance established that Clardy picked up two pieces of luggage from the luggage carousel, a soft brown case and a green canvas bag. Spencer, who was carrying a folded newspaper, retrieved a brown, hardcover Samsonite suitcase.
 
 
 7
 Lieutenant Weil and a third officer approached Clardy and Spencer at the airport taxi stand, identified themselves as narcotics officers, and asked them for identification. Mr. Spencer gave his correct name to the officers but said he had no identification on him. He did not know what he had done with the baggage claim checks. He initially consented to a search of the bags, but, after he was advised of his rights, withdrew this consent.
 
 
 8
 Officer Curry removed the suitcases from the taxi and the taxi driver handed him a folded newspaper which had been lying on the backseat. The newspaper contained the airline tickets with the three baggage claim checks stapled to the Delta wrapper. Spencer and Clardy voluntarily accompanied the officers to a nearby police station and were questioned in separate rooms.
 
 
 9
 Spencer admitted that he was traveling under an assumed name but declined to reveal Clardy's true name, replying, instead, "What name did he give you--you'd better ask him." Spencer acknowledged that the hardcover Samsonite suitcase was his and that he was sharing another bag with Clardy which contained his shoes. Clardy acknowledged the green canvas bag. Neither man claimed the soft brown case.
 
 
 10
 Spencer and Clardy were allowed to leave without their luggage. After a search warrant was obtained, the soft brown case was found to contain a large amount of cash and 168.54 grams of cocaine, a Schedule II narcotic controlled substance, as defined by 21 U.S.C. Sec. 812. A test of the cocaine revealed it to be at 53% purity, a strength much higher than usual "street level" cocaine normally purchased for personal use.
 
 
 11
 At his trial, Spencer admitted that he had been suspicious of Clardy's motives in traveling to Miami but that he had not questioned him because he "didn't want to know and involve himself in anything." He denied any knowledge of the cocaine or any criminal intent.
 
 
 12
 Judge Bertlesman found that, even though Spencer had carried the tickets with the claim checks, he never had actual or constructive possession of the bag containing the cocaine because the claim checks were not required for retrieval of the luggage from the carousel. Clardy had removed the soft brown bag without the check. Despite this lack of possession, Judge Bertlesman ruled that Spencer could be found guilty of the charge if he aided or abetted Clardy's actual possession by associating himself with the criminal venture, participating in it as if he wished to bring it about.
 
 
 13
 This is a correct statement of the law. Proof of actual possession with intent to distribute is not necessary for conviction as long as there is proof, beyond a reasonable doubt, that the defendant aided and abetted the criminal venture. United States v. Winston, 687 F.2d 832, 835 (6th Cir.1982).
 
 
 14
 The real question on appeal is whether there is sufficient evidence that Spencer aided or abetted Clardy's possession of cocaine with the intent to distribute it. In order to aid or abet another to commit a crime, it is necessary that a defendant in some way associate himself with the venture, that he participate in it as something that he wishes to bring about, that he seek by his action to make it succeed. United States v. Zackert, 783 F.2d 677, 678 (6th Cir.1986).
 
 
 15
 Judge Bertlesman found that Spencer knew that Clardy was carrying a controlled substance and that, although he did not have a "piece of the action," he did render assistance to Clardy on the trip, not only by acting as a cover but by attempting to conceal the incriminating tickets. In reaching this conclusion, he relied on certain specific, overt acts such as the fact that Spencer traveled under a false identity, assisted Clardy in boarding the flights, held the tickets and claim checks, procured the taxi, failed to give Clardy's name to the authorities, failed to establish ownership of the bag containing the cocaine, and attempted to conceal the tickets and baggage claim checks in the newspaper left on the taxi seat.
 
 
 16
 While this evidence is more pertinent to the charge of aiding and abetting the possession of cocaine than to sharing in the intent to distribute it, evidence of the amount and quality of the cocaine involved will support an inference of intent to distribute the substance. United States v. Sarmiento, 744 F.2d 755, 761 (11th Cir.1985); United States v. Faymore, 736 F.2d 328, 333 (6th Cir.1984), cert. denied 105 S.Ct. 213 (1984).
 
 
 17
 A careful review of the record indicates that all of Judge Bertelsman's findings of fact and conclusions of law are correct and that there is sufficient evidence to support his finding that Spencer is guilty as charged. The judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Thomas G. Hull, Chief Judge, United States District Court for the Eastern District of Tennessee, sitting by designation