902 F.2d 35
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Joseph BROWN (89-3549), Leatrice Calloway (89-3558),
Defendants-Appellants.
 Nos. 89-3549, 89-3558.
 United States Court of Appeals, Sixth Circuit.
 April 30, 1990.
 
 Before RALPH B. GUY, Jr., and ALAN E. NORRIS, Circuit Judges; and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendants, Joseph Brown and Leatrice Calloway, were indicted and charged with a conspiracy to maintain a place for the distribution of a controlled substance and to possess crack cocaine. 21 U.S.C. Sec. 846. Brown was charged with possession of crack cocaine, 21 U.S.C. Sec. 841(a)(1), in a separate count,[1] and Calloway was charged in a separate count with being the lessee of 1147 Franklin Avenue, Columbus, Ohio, and making those premises available for the storage and distribution of crack cocaine. 21 U.S.C. Sec. 856(a)(2). Although jointly indicted, separate trials were held for each defendant.
 
 
 2
 On appeal, the primary issue raised by both defendants is the sufficiency of the evidence. Calloway also objects to certain evidentiary rulings made by the trial judge. Upon review, we conclude that the evidence was sufficient to support the convictions and that the trial judge did not abuse his discretion in excluding certain evidence offered by Calloway. We will affirm.
 
 I.
 
 3
 Based upon informant information and surveillance, the police were aware that crack cocaine was being sold out of the premises located at 1147 Franklin Avenue, Columbus, Ohio. At least two controlled buys were made under police supervision. Leatrice Calloway was the lessee of these premises. After the buy made on August 23, 1988, Columbus narcotics officers obtained and executed a search warrant.
 
 
 4
 When the warrant was executed, defendant Brown and a male juvenile were in the house. A third male was on the premises but ran when he saw the police arrive, and he successfully eluded pursuit. During the search, a total of 114 grams of crack cocaine were found in various locations, including the kitchen, living room, bedroom, and outside the back door, the latter apparently being dropped or discarded by the individual who fled. Various other items connected with the drug trade were also discovered, including a bulletin board with the "street" names and beeper numbers of several known or suspected drug dealers. Various sums of money were found secreted in six different locations in the house. Police also found pictures of Calloway and Brown posing together with money and jewelry.
 
 II.
 
 5
 Brown's trial was held first. His defense, although he did not testify, was that he was on the premises when the warrant was executed but not otherwise involved. He did not have any drugs on his person; indeed, he was clad only in undershorts when the police burst into the house.
 
 
 6
 The evidence offered by the government to offset this "innocent bystander" defense was circumstantial for the most part but sufficient, when viewed in the light most favorable to the prosecution, to provide a basis for a "rational trier of fact [to] have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The most damaging testimony against Brown came from Leatrice Calloway, who testified under a compulsion order, and from Brown's mother. In order to put Calloway's testimony in its proper perspective, it is important to know what her defense was in her subsequent trial. Essentially, Calloway's position was that the entire neighborhood surrounding 1147 Franklin had been taken over by crack dealers and that, as a result, she had moved out of 1147 Franklin and was staying with friends and relatives. Although earlier she told police, in a statement that was tape recorded, that Brown was dealing drugs, she was somewhat more equivocal in her direct testimony at trial. She did, however, establish that Brown had been living at 1147 Franklin for one and one-half years and, at the time of the execution of the search warrant, was the principal, permanent resident there. She also indicated that known drug dealers frequented the premises, and that she warned Brown about running with a bad crowd.
 
 
 7
 Even more damaging to Brown was his mother's testimony. Bernice Brown came off as a totally credible and sympathetic mother of 16 who had only her children's welfare at heart. She indicated that she had been trying for some time to get her son Joe, as well as some of her other sons, away from the influence of Leatrice Calloway.
 
 
 8
 Q. Did you have an occasion in August of last year or thereabouts to talk to Detective Malloy of the Columbus Police Department?
 
 
 9
 A. I talked to quite a few detectives and narcotics agents because I was trying to seek help in getting Joe out of the house with Leatrice, so I talked to quite a lot of people on the detectives force, narcotics force and police force, and I even wrote letters to the White House trying to get help getting Joe out of that house with that woman.
 
 
 10
 Q. What was your concern?
 
 
 11
 A. I was concerned what she was doing and he might get in trouble being there with her.
 
 
 12
 Q. Do you know what she was doing there?
 
 
 13
 A. She was selling drugs.
 
 
 14
 Q. And you were concerned your son would be caught up with that?
 
 
 15
 A. I knew if she got caught and he was in the house with her, he would be blamed and there couldn't be no good outcome.
 
 
 16
 Q. Was it among friends and neighbors or was it common knowledge drugs were being sold from that house?
 
 
 17
 A. Everybody knew it.
 
 
 18
 (App. 130-31; Tr. 126-27).
 
 
 19
 Although Calloway was the lessee of the house, there was ample evidence from which the jury could have concluded that, with Calloway's consent, Brown was in constructive control of both the house and the narcotics found therein. The jury could also have reasonably concluded that Brown was part of a "beeper network," and that he had a leased beeper and the beeper numbers of the other drug dealers. The picture found of Brown and Calloway also further supported the conclusion of a joint, illicit working arrangement. This was sufficient for the jury to conclude that Calloway and Brown had conspired together as charged.[2]
 
 III.
 
 20
 The Calloway trial was in many respects a replay of Brown's trial. Brown did not testify against Calloway, however, so the element of the testifying codefendant was missing. Neither did Calloway testify. Brown's mother did testify again, however.
 
 
 21
 On appeal, the government has summarized the evidence found in the record from which the jury could reasonably have found the elements of the offense charged beyond a reasonable doubt. United States v. Wood, 780 F.2d 555 (6th Cir.), cert. denied, 475 U.S. 1111 (1986). Our independent review of the record of Calloway's trial convinces us that the government's summary is a fair and accurate representation of this evidence:
 
 
 22
 (1) the address raided by the Columbus Police Department at 1147 Franklin Avenue, Columbus, Ohio, was an apartment rented to Leatrice Calloway.
 
 
 23
 (2) Leatrice Calloway permitted Joseph Brown and others to reside at her residence.
 
 
 24
 (3) the Columbus Police Department "crack house" Task Force made three controlled purchases of "crack" cocaine from this residence during the preceding four months.
 
 
 25
 (4) during the course of the search pursuant to a search warrant, officers found pictures depicting Leatrice Calloway and Co-Defendant Joseph Brown and others holding what appears to be large sums of cash.
 
 
 26
 (5) cocaine was found in locations throughout the house including the bedroom occupied by Leatrice Calloway.
 
 
 27
 (6) Leatrice Calloway acknowledged that she knew drug dealers were using her apartment to sell "crack" cocaine.
 
 
 28
 (7) numerous telephone numbers and "beeper" numbers of known or suspected drug dealers were found in the house.
 
 
 29
 (8) a witness saw Leatrice Calloway place a bag in a bucket on her front porch and then people came to that box and retrieved the bag from the bucket.
 
 
 30
 (Appellee's Brief at 10-11).
 
 
 31
 Although Calloway may have moved herself and her children away from 1147 Franklin before the search warrant was executed, this would not be fatal to the government's case, as the jury still could have concluded that as the lessee of the premises she retained control and was a part of the drug business being conducted on and from those premises.
 
 IV.
 
 32
 Calloway also complains of the trial judge excluding certain evidence. The excluded evidence involved the fact that a friend of Calloway's had been beaten up and that shots had been fired into her house after she testified against Brown. Mrs. Brown allegedly was behind these incidents. Apparently, Calloway's theory was that if she and Brown were co-conspirators, he would not be retaliating against her. The problem with this theory, which Judge Graham pointed out, was that even assuming that Mrs. Brown was the person responsible for these acts, she had her own axe to grind with Calloway and, thus, the evidence was so equivocal as to be lacking in probative value. We agree.
 
 
 33
 AFFIRMED.
 
 
 
 [1]
 The possession count was subsequently dismissed
 
 
 [2]
 Although Brown moved for a judgment of acquittal at the close of the government's case, he did not renew the motion at the end of the trial. Therefore, we actually review Brown's claim under a "manifest injustice" standard. As we stated in United States v. Faymore, 736 F.2d 328, 334 (6th Cir.), cert. denied, 469 U.S. 868 (1984): "Absent a manifest miscarriage of justice, we are unable to review the district court's denial of a Rule 29 Motion where the defendant did not renew that Motion at the close of all of the evidence."