16 F.3d 1222
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Ricardo MARTIN, Defendant-Appellant.
 No. 91-3438.
 United States Court of Appeals, Sixth Circuit.
 Jan. 11, 1994.
 
 Before: JONES and SUHRHEINRICH, Circuit Judges; and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant Ricardo Martin appeals, pro se, his conviction on one count each of conspiring to possess with intent to distribute, and of attempting to possess with intent to distribute, cocaine, and four additional counts of using a telephone to facilitate the commission of a felony. See 21 U.S.C. Secs. 842(a)(1) and (b)(1)(A)(ii), 843(b), and 846; 18 U.S.C. Sec. 2. Because we hold that the evidence was sufficient to support the jury's verdicts, and because we find that the district court committed no reversible error, Martin's convictions are AFFIRMED.
 
 I.
 
 2
 Martin challenges the sufficiency of the evidence against him and, accordingly, this court reviews that evidence in the light most favorable to the government's case. United States v. Faymore, 736 F.2d 328, 334 (6th Cir.), cert. denied, 469 U.S. 868 (1984).
 
 
 3
 Viewed in this light, the evidence shows that the government's informer, Claudia Alfaro, over the course of several recorded telephone calls in 1989, agreed to sell Martin ten kilograms of cocaine for $14,500. Martin, hesitant to travel to Cincinnati for the cocaine, told Alfaro that he would send Robert Conlee, an employee, in his stead. Conlee and Edward Phillips, another of Martin's employees, picked up the money from Martin and drove to Cincinnati to complete the exchange. When they met with Alfaro and undercover federal agents, however, they were arrested. Martin remained at large until his arrest in 1990.
 
 
 4
 Conlee and Phillips were convicted of attempted possession of narcotics with the intent to distribute and conspiracy to commit the same, respectively. Their convictions have been affirmed. United States v. Conlee, --- F.2d ---- (6th Cir.1991) (per curiam) (unpublished). Martin was tried before a jury in the Southern District of Ohio and was convicted on all counts. Despite being represented by two different attorneys during the pendency of this appeal, Martin proceeds pro se before this court and presents the following allegations of error: (1) prosecutorial misconduct in the intentional use of perjured testimony; (2) a Brady[1] violation in that the government failed to turn over certain of Alfaro's statements; (3) improper admission into evidence of the recorded telephone calls; (4) impermissible "contingent fee" contract between the government and witness Alfaro; (5) failure to sequester the jury during deliberations; (6) insufficient evidence to convict; and (7) erroneous denial of his motion for new trial.
 
 II.
 
 5
 Martin's allegations of error, because he proceeds pro se, have been broadly construed and we have reviewed the record, where appropriate, in search of support for his claims. As is often the case with pro se appeals, however, Martin alleges error where his trial counsel did not. With regard to these allegations, we limit our review to determining the existence of plain error.
 
 A. Prosecutorial Misconduct
 
 6
 Martin contends that the government was "out to get" him and, even though they knew Alfaro's testimony would be perjury, they prosecuted him on the strength of her "lies" alone. To be certain, the prosecution's knowing use of perjured testimony would be grounds for new trial. Mooney v. Holohan, 294 U.S. 103, 112 (1935). Martin, however, submits no support for his claim.
 
 
 7
 Before a conviction may be voided for the prosecution's use of testimony it knows to be false, it first must be shown that any of government's witnesses perjured themselves. No perjury has been shown and Martin's protestations of innocence do not, by themselves, prove the prosecuting witness a liar. With the exception of one minor inconsistency concerning a collateral matter, brought out during cross-examination, none of Alfaro's testimony has been shown to be wrong--much less perjury.
 
 
 8
 It appears that Martin has confused perjury, the intentional giving of false testimony, with the sort of deceit practiced by Alfaro in her dealings with Martin. Certainly she lied to Martin as they set up this drug sale, but that is not perjury and the government's use of Alfaro's recorded statement's to Martin that the government knew to be part of a ruse is not prosecutorial misconduct of any kind, far less the kind of misconduct at issue in Mooney. This point is denied.
 
 B. Brady
 
 9
 Martin contends that, because he is innocent, Alfaro must be lying. If she is lying, there must be proof and the government must have it. Therefore, Martin concludes, the government's failure to turn over this proof pursuant to defense counsel's request at the close of Alfaro's testimony must violate Brady and the Jencks Act, 18 U.S.C. Sec. 3500.
 
 
 10
 Initially we note that the district court accepted the prosecution's explanation that it had turned over all of Alfaro's "statements" as defined by 18 U.S.C. Sec. 3500(e). We find no error in this conclusion. Apparently, whatever conversations Alfaro may have had with the FBI or the IRS were neither recorded nor summarized and presented to her for her approval. Therefore, we hold that no violation of the Jencks Act has been shown.
 
 
 11
 Concerning Martin's allegation of a Brady violation, we are not able to discern what information Martin believes the government possessed that Brady required it to turn over. As noted, the government contends that it was not in possession of any statements made by Alfaro that it had not already turned over to the defense.[2] Full disclosure had been made concerning Alfaro's agreement to cooperate with government in exchange for having certain charges dropped and in exchange for certain sums of money. Martin's trial counsel cross-examined Alfaro extensively using this information.
 
 
 12
 Finally, it appears from Martin's brief that whatever it was that he contends should have been turned over, it would have provided only additional impeachment material. All of the relevant portions of Alfaro's testimony, her identification of Martin's voice, the money paid to her by the government, her arrest for drug possession, were covered extensively and ably by Martin's trial counsel during cross-examination. Additional impeachment evidence, assuming that there was any, would merely have been cumulative. At bottom, the jury believed Alfaro and believed that the voice on the tape was Martin's. Proving some real or imagined inconsistency in her testimony as to some collateral matter, we do not believe, would provide the "reasonable probability" of a different outcome necessary to prove prejudice, assuming a violation of Brady occurred. United States v. Presser, 844 F.2d 1275, 1281 (6th Cir.1988). Therefore, as no reversible error has been shown, this point is denied.
 
 3. Tape Recordings
 
 13
 As noted, the linchpin in the government's case were the recordings of telephone conversations between Alfaro and Martin. Prior to playing each of these tapes for the jury, the prosecution had Alfaro recall the conversation, its date and time, and identify both the tape recording and the typed transcripts as fair and accurate depictions of what was said. She identified the only two voices on the tapes as her own voice and that of Martin. Nothing more was required. See Fed.R.Evid. 901(5). This point is denied.
 
 4. "Contingent Fee" Contract
 
 14
 Martin contends that Alfaro's testimony was the product of a forbidden "contingent fee" contract, i.e., an agreement where the fee, or its amount, is contingent upon the outcome of the trial. Martin has not shown, however, that that such an agreement existed.
 
 
 15
 Alfaro testified that, at the time of trial, she had already received from various governmental agencies some $23,000 for her cooperation in this case. It is unclear whether "this case" refers to Martin's prosecution alone, or whether she was referring to the "sting" and the five prosecutions which stemmed from it. In any event, she stated unequivocally that she neither expected nor had been promised any more money after the trial beyond that which she had already received. Thus, it appears impossible to us that her fee was "contingent" upon a conviction inasmuch as she had already received it before trial. Accordingly, this point is denied.
 
 5. Jury Sequester
 
 16
 At the close of evidence, the district court allowed the jury to go home at night and return to court the next day to continue their deliberations. In doing so, the court gave the appropriate instructions concerning outside influences. This overwhelmingly common practice was not objected to. Martin alleges no specific misconduct by a juror nor any specific outside influence alleged to have prejudiced him in any way. This point is denied.
 
 6. Sufficiency
 
 17
 The evidence as set out above, clearly supports Martin's convictions for conspiracy, attempt to possess cocaine, and use of the telephone to facilitate the commission of a felony. Martin's own admissions, captured in the recorded conversations, establish most of the necessary elements. Alfaro's testimony provided sufficient evidence for the jury to believe that it was, in fact, his voice on the tape and, in the absence of any evidence to the contrary, that decision must not be disturbed.
 
 
 18
 Apparently, Martin is most concerned with his conviction for conspiracy. Correctly noting that the government had to prove the existence of an agreement and Martin's knowing participation in it, Martin asserts that no conspiracy could exist between himself and Alfaro because (1) they were buyer and seller in a single transaction and (2) there was no agreement because she never intended to sell him the cocaine. Martin misunderstands the government's charge. The conspiracy of which Martin was convicted was between and among Martin, Conlee, Phillips, and others to possess and distribute the cocaine that Alfaro was to sell. The elements are reasonably inferred from the fact that Martin told Alfaro he would have his employees pick up the money, take it to her in Cincinnati, buy the cocaine, and bring it back to him. Corroboration may be found in the fact that these things happened just the way Martin told Alfaro he would make them happen. This point is denied.
 
 7. New Trial Motion
 
 19
 Martin's sole argument with respect to the denial of his motion for a new trial is that, because the motion was denied on the grounds that Alfaro's testimony was corroborated by the tapes, and because Martin contends he has shown Alfaro lied on the tapes, the entire trial was a miscarriage of justice and should be set aside. This argument merely restates those made above and is, therefore, rejected.
 
 III.
 
 20
 For the reasons stated, Martin's convictions are AFFIRMED in all respects.
 
 
 
 [1]
 See Brady v. Maryland, 373 U.S. 83 (1963)
 
 
 [2]
 Apparently, the government did not turn over to Martin some additional taped conversation between Alfaro and Conlee. These conversations, however, dealt with a "side-deal" between these two for an additional four kilograms of cocaine, were not relevant to any issue in Martin's trial, and were not introduced in his trial. The government's failure to turn them over was not a violation of Brady