NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0521n.06

Case No. 20-1274

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Nov 16, 2021
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| ANDREY LARONGE GUIDRY, | ) | |
| Defendant-Appellant. | ) | O P I N I O N |

BEFORE: DAUGHTREY, COLE, and CLAY, Circuit Judges.

COLE, Circuit Judge. Andrey Guidry was sentenced to 120 months' imprisonment after pleading guilty to being a felon in possession of a firearm. Guidry now appeals the district court's sentencing decision on the grounds that the application of an enhancement under U.S.S.G. § 2K2.1(b)(6)(B) was procedurally and substantively unreasonable. Guidry also challenges the district court's determination that his prior Michigan convictions for "[c]ontrolled substance-delivery/manufacture" under Mich. Comp. Laws Ann. § 333.7401 are "controlled substance offenses" within the meaning of U.S.S.G. § 4B1.2. We affirm.

**I.**

**A. Factual Background**

On September 3, 2019, the Fugitive Team of the Grand Rapids Police Department ("GRPD") saw Guidry and another man walking down the street. GRPD knew there were

outstanding warrants for Guidry's arrest. The officers, with their guns drawn, ordered Guidry and the other man to the ground. Guidry cooperated with the officers and told the officers he had a gun and some heroin. The officers arrested Guidry without incident and placed him in handcuffs. The officers searched Guidry and found (1) a loaded Cobra Enterprises, Model Patriot, .380 caliber semiautomatic pistol, (2) twelve Hornady 0.380 rounds of ammunition, and (3) a plastic bag with four small baggies of narcotics. When these narcotics were tested in the laboratory, they tested positive for 0.373 grams of heroin and 0.143 grams of fentanyl. On October 23, 2019, Guidry was indicted in the United States District Court for the Western District of Michigan. Guidry was charged with a single count of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). On December 6, 2019, Guidry pleaded guilty without a plea agreement.

On December 20, 2019, United States Probation and Pretrial Services ("Probation") conducted a presentence interview with Guidry at the Newaygo County Jail. Guidry candidly discussed his history of drug and alcohol use. He explained that his mother passed away when he was 18 years old from Amyotrophic Lateral Sclerosis ("ALS"). "He loved his mother, and she was everything to him," so her death was very difficult. (PSR, R. 28, PageID 80.) After his mother died, Guidry experienced depression.

Guidry reported that he used heroin for the first time when he was 19 years old. He described his heroin use as "occasional" when he was depressed and that he used by "snorting lines." (PSR, R. 28, PageID 83.) At this presentence interview, Guidry said he last used heroin in June 2019. But Guidry also said he was under the influence of heroin at the time of his September 2019 arrest. Guidry told Probation that he would benefit from substance treatment, specifically for alcohol and heroin use.

**B. Sentencing**

Probation prepared a Presentence Investigation Report ("PSR") in anticipation of sentencing. At the time of his September 2019 arrest, Guidry had two prior Michigan convictions for possession with intent to distribute less than 50 grams of heroin, in violation of Mich. Comp. Laws Ann. § 333.7401. In the report, Probation classified both of Guidry's Michigan convictions as "controlled substance offenses" within the meaning of U.S.S.G. § 4B1.2. As a result, Guidry's base offense level increased from 14 to 20. Guidry objected to this classification, arguing that under the court's en banc decision in *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (en banc), the 2012 convictions did not qualify as "controlled substance offenses."

Probation also applied the four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) because in addition to the gun, Guidry had four baggies with small amounts of heroin and fentanyl inside. Guidry objected, arguing that because there was no evidence of drug-trafficking, the enhancement did not apply. He argued that his history of drug use, the small quantity of narcotics found in the baggies, and the lack of indicia of drug sales, instead suggested possession for personal use.

On March 19, 2020, the district court held a sentencing hearing. Guidry argued the record was consistent with possession for personal use and that it lacked the standard indicia of distribution. As Guidry's defense counsel explained in the hearing:

> [Mr. Guidry] was not engaging in any trafficking transaction, there is no evidence he was on his way to do so. There were no trappings of dealings, no cash recovered, no scales. He was not in a drug area, at least not as it was reflected in any report.

(Sentencing Hr'g Tr., R. 38, PageID 180.)

Guidry further argued that the § 2K2.1(b)(6)(B) enhancement was inapplicable because there was no requisite connection between the gun and the small amount of heroin found. "The

firearm in this case did not advance any felony. The coexistence of another felony is not enough."

(Sentencing Hr'g Tr., R. 38, PageID 180.)

The government responded by insisting that Guidry did intend to distribute the drugs. Specifically, the government argued that possession of four separate baggies of drugs was in and of itself indicative of dealing drugs and not of personal use.

> Mr. Guidry did not have just one bag of drugs, he had four separate baggies which is in and of itself indicative of distribution and not personal use. People who are drug users don't tend to buy one quantity of drugs and keep it, and buy another quantity of drugs and keep it, and another quantity of drugs and keep it, if it's all for personal use, they tend to buy and use and buy and use. However, if the intent is to sell the drugs, they are generally individually packaged.

 (Sentencing Hr'g Tr., R. 38, PageID 184.)

The government further argued that Guidry's claim of possession for personal use was inconsistent with the conversation he had with Probation, pointing to Guidry's claim that he had not used heroin in months. The government contended that Guidry's claim that he had not used heroin in months supported the government's belief that he intended to distribute.

In response, the district court asked Guidry's counsel what she made of the fact that Guidry told Probation he had not used heroin in several months. Guidry's counsel responded that Guidry's drug use had been a recurrent habit throughout his adult life and that at the time of his arrest, he did intend to use the drugs he possessed.

Ultimately, the district court was not persuaded by Guidry's arguments, and it overruled Guidry's objections and rejected his claim of possession for personal use only. The court concluded that Guidry intended to distribute the drugs, emphasizing the packaging (four separate baggies) and the fact that Guidry had two prior convictions for possession with intent to distribute. The district court also agreed with Probation that both of Guidry's prior Michigan drug convictions were "controlled substance offenses." The district court applied the § 2K2.1(b)(6)(B)

enhancement for possession of a firearm in connection with another felony offense. Guidry was sentenced to 120 months, which was both within the Guidelines range and below the statutory maximum. Guidry timely appealed the district court's sentencing decision. We have jurisdiction under 28 U.S.C. § 1291.

## II.

### A. The district court did not err in applying the enhancement under U.S.S.G. § 2K2.1(b)(6)(B).

We first consider Guidry's argument that his sentence was procedurally and substantively unreasonable. Although Guidry claims to challenge his sentence on both grounds, he does not explicitly develop a substantive reasonableness claim in his briefing. Because he failed to develop this argument, any challenge to his sentence based on substantive reasonableness grounds is forfeited. *United States v. Reed,* 167 F.3d 984, 993 (6th Cir. 1999).

Even if Guidry did not forfeit his substantive reasonableness claim, it fails. We review the substantive reasonableness of a sentence for abuse of discretion. *United States v. Solano-Rosales*, 781 F.3d 345, 356 (6th Cir. 2015). As we explained in *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018):

> A claim that a sentence is substantively unreasonable is a claim that a sentence is too long (if a defendant appeals) or too short (if the government appeals). The point is not that the district court failed to consider a factor or considered an inappropriate factor; that's the job of procedural unreasonableness. It's a complaint that the court placed too much weight on some of the [18 U.S.C.] § 3553(a) factors and too little on others in sentencing the individual. Needless to say, this is a matter of reasoned discretion, not math, and our highly deferential review of a district court's sentencing decisions reflects as much. *Gall [v United States]*, 552 U.S. [38,] 51, 128 S. Ct. 586 [(2007)].

Here, the district court did not select Guidry's 120-month sentence arbitrarily or give an unreasonable amount of weight to any pertinent sentencing factor. Moreover, Guidry's sentence was within the Guidelines range. And for sentences within the Guidelines range, we apply a

rebuttable presumption of substantive reasonableness. *United States v. Herrera-Zuniga*, 571 F.3d 568, 582 (6th Cir. 2009). Guidry's 120-month sentence, which was within the Guidelines range, was not greater than necessary to comply with the purposes of sentencing. For these reasons, Guidry's substantive reasonableness challenge fails.

We now turn to Guidry's procedural reasonableness challenge. Guidry contends the district court imposed a procedurally unreasonable sentence when it applied the enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for two reasons. First, Guidry argues the district court erred when it rejected his assertion that he was carrying the drugs for personal use and instead concluded that Guidry intended to distribute the drugs. Second, Guidry argues that once the district court erroneously concluded Guidry intended to distribute the drugs, it also erred in finding that Guidry possessed the firearm in connection with the drug offense.

Because Guidry objected below, his sentence is reviewed for procedural reasonableness under a deferential abuse of discretion standard. *United States v. Fleischer*, 971 F.3d 559 (6th Cir. 2020). Under this standard, we conclude that a sentence is procedurally unreasonable "if the district court 'fail[s] to calculate (or improperly calculate[es]) the Guidelines range, treat[s] the Guidelines as mandatory, fail[s] to consider the § 3553(a) factors, select[s] a sentence based on clearly erroneous facts, or fail[s] to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range.'" *United States v. Nichols*, 897 F.3d 729, 737 (6th Cir. 2018) (quoting *Gall*, 552 U.S. at 51.)

The procedural reasonableness analysis has three steps. *See United States v. Bolds*, 511 F.3d 568 (6th Cir. 2007). "First, we must ensure that the district court 'correctly calculat[ed] the applicable Guidelines range' which [is] 'the starting point and initial benchmark' of its sentencing analysis." *Id.* at 579 (quoting *Gall*, 552 U.S. at 51). Second, the district court must

have given both parties an opportunity to argue for the sentence they determined was appropriate, and then considered all of the § 3553(a) factors." *Id.* Third, we must ensure that the district court explained the sentence to allow for "meaningful appellate review and to promote the perception of fair sentencing." *Gall*, 552 U.S. at 50 (quoting another source).

By arguing that the district court relied on clearly erroneous facts when applying the enhancement, Guidry is challenging the procedural reasonableness of his sentence at step one. "In reviewing the district court's calculation of the Guidelines, we . . . review the district court's factual findings for clear error and its legal conclusions *de novo.*" *United States v. Yancy*, 725 F.3d 596, 598 (6th Cir. 2013). A factual finding is clearly erroneous if "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Webb*, 616 F.3d 605, 609 (6th Cir. 2010) (citations omitted). We address both of Guidry's procedural reasonableness arguments in turn.

> i. *The district court did not err in concluding that the record established intent to distribute.*

We first consider whether Guidry's sentence was procedurally unreasonable because the district court erroneously concluded that he intended to distribute the heroin and fentanyl. A review of the record shows the district court did not err, much less clearly err, in finding intent to distribute. There was sufficient evidence to infer Guidry possessed the narcotics in order to distribute.

The district court found that the individually wrapped baggies of narcotics that Guidry carried at the time of his arrest were "indicative of distribution and not personal use." (Sentencing Hr'g Tr., R. 38, PageID 184.) Intent to distribute is not necessarily established simply because a defendant has a modest amount of individually packaged drugs. *See United States v. Faymore*, 736 F.2d 328, 333 (6th Cir. 1984); *United States v. Clark*, 928 F.2d 733, 737 (6th Cir. 1991); *United*

*States v. McCready-Redd*, 475 F.3d 718 (6th Cir. 2007). But in reviewing the district court's determination that there was sufficient evidence to infer an intent to distribute, we consider the record in its entirety. In addition to the individually wrapped baggies, Guidry was also carrying a loaded semiautomatic gun.

The presence of a loaded gun, especially a semiautomatic pistol, is an indicator of distribution. In *United States v. Burns*, 498 F.3d 578, 581 (6th Cir. 2007), we determined the fact a gun is loaded makes it more likely the gun is for protection and to facilitate a drug sale. And in *United States v. Hardin*, 248 F.3d 489, 497 (6th Cir. 2001), we concluded that semiautomatic pistols, like the one Guidry had, were commonly associated with drug-trafficking. In *United States v. Shields*, 664 F.3d 1040, 1046 (6th Cir. 2011), we also explained: "[I]t is easier to see how a firearm facilitates drug-trafficking transactions, than it is to see how a firearm facilitates the mere possession of controlled substances." Thus, it was reasonable for the district court to conclude that the loaded semiautomatic gun, together with the individually packaged drugs, were indicia of intent to distribute.

Guidry's statement to Probation that he had not used heroin since June of 2019 was also an indicium of intent to distribute. If Guidry had not used since June, he was less likely to be carrying the drugs for personal use. To challenge this reasoning, Guidry points to inconsistencies in his statements. Namely, although he told Probation he had not used since June, he also said he was under the influence of heroin at the time of his arrest. He further told Probation he would benefit from substance abuse treatment, suggesting he was still using drugs. Guidry contends that considering his drug-use history, of which the district court was aware, these circumstances were not indicative of distribution and were instead indicative of present-day personal use.

But Guidry's statements are not necessarily inconsistent with the district court's conclusion. Even assuming Guidry had not stopped using drugs and that he was under the influence

of heroin at the time of his arrest, he still could have intended to distribute. "Guidry---like many users----could have used some heroin himself while intending to distribute the rest to feed his habit or to make some money." (Appellee Br. 12.) Drug dealers are not mutually exclusive from drug users.

Finally, when reviewing the evidence, the district court also had the benefit of context. Guidry had two prior Michigan convictions for possession with intent to distribute. The similarity of Guidry's prior convictions reasonably informed the court that Guidry intended to distribute the heroin and fentanyl.

Under these circumstances, the district court did not err when it concluded that the record contained sufficient evidence to establish intent to distribute. The record, which shows individually wrapped baggies, a loaded semiautomatic gun, an assertion to Probation that heroin had not been used in months, and prior drug-trafficking convictions, does not suggest that the district court made a clear mistake. *See United States v. Donadeo*, 910 F.3d 886 (6th Cir. 2018).

> ii.     *The district court did not err in concluding there was a nexus between the drugs and the gun, as required by § 2K2.1(b)(6)(B).*

We turn next to whether Guidry's sentence was procedurally unreasonable because the court failed to demonstrate the required nexus between the drugs and the gun. Here, the government's burden of demonstrating the requisite connection between the drugs and the gun is not a particularly high one. It "simply requires that the possession of the firearm 'cannot be the result of accident or coincidence.'" *James v. United States*, 217 F. App'x 431, 438 (6th Cir. 2007) (quoting *Hardin*, 248 F.3d at 497–98). In *United States v. Davis*, 372 F. App'x 628, 630 (6th Cir. 2010), we concluded that "where firearms facilitated, or had the potential to facilitate, a drug transaction, § 2K2.1(b)(6) is satisfied." Here, the district court had already concluded Guidry intended to distribute, and the gun was found near the four baggies of narcotics. Because the gun

had the potential to facilitate drug trafficking, the district court established the requisite nexus under § 2K2.1(b)(6).

For the foregoing reasons, the district court's application of an enhancement under U.S.S.G. § 2K2.1(b)(6)(B) did not result in a procedurally unreasonable sentence. The district court did not clearly err in concluding that Guidry intended to distribute. And once the district court properly made that determination, the district court did not err in finding the requisite nexus under § 2K2.1(b)(6).

We now turn to Guidry's final challenge.

**B. Guidry's Michigan convictions for "Controlled Substance-delivery/manufacture" in violation of Mich. Comp. Laws Ann. U.S.C. § 333.7401 qualify as "controlled substance offenses" within the meaning of U.S.S.G. U.S.C. § 4B1.2.**

Guidry also challenges the district court's classification of his prior Michigan drug-trafficking convictions as "controlled substance offenses" under U.S.S.G. § 4B1.2. This challenge is foreclosed by *United States v. Garth*, 965 F.3d (6th Cir. 2020) and *United States v. Thomas*, 969 F.3d 583 (6th Cir. 2020). In both cases, we held that prior convictions under Michigan law for delivery of heroin and possession with intent to deliver marijuana constituted "controlled substances offenses."

**III.**

For the foregoing reasons, we AFFIRM the district court's judgment.