NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0465n.06
Filed: August 4, 2008

07-3584

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| JASON WILLIAM KING, | ) | SOUTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |

Before: DAUGHTREY and McKEAGUE, Circuit Judges; VAN TATENHOVE,[*] District Judge.

PER CURIAM. The defendant, Jason William King, alleges that the evidence adduced at his jury trial was insufficient to support his conviction on two counts of distributing more than five grams of crack cocaine and, consequently, that the district judge erred in denying his motions for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. We find no merit to this contention and affirm the judgment entered by the district court.

---

[*]The Hon. Gregory Van Tatenhove, United States District Judge for the Eastern District of Kentucky, sitting by designation.

In analyzing any challenge to the sufficiency of the evidence, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979). In doing so, however, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See United States v. Hilliard, 11 F.3d 618, 620 (6th Cir. 1993). Moreover, the evidence need not exclude every reasonable hypothesis except that of guilt. United States v. Adamo, 742 F.2d 927, 932 (6th Cir. 1984).

In an effort to satisfy its evidentiary burden at trial in this matter, the government offered the testimony of informant Martavious Arnold and of four officers of the Columbus (Ohio) Police Department. In his testimony, Arnold first conceded that he had agreed with federal prosecutors to testify against King in exchange for a reduction in his own sentence in an unconnected drug-trafficking case from at least 20 years in prison to a mere three years' incarceration.

The informant also asserted that he had known Jason King for more than ten years, and that he agreed with the police to attempt to purchase drugs from King. In furtherance of that subterfuge, Arnold telephoned the defendant on June 1, 2005, and expressed a desire to meet King at a specified location to buy an ounce of crack cocaine. After making those arrangements, Arnold contacted Detective John Whitacre of the Columbus Police Department to relate to him the plan for the drug purchase. When Whitacre arrived at the

scene, the detective searched Arnold to ensure that the informant was not already in possession of other drugs or money, gave Arnold $760 to purchase the crack, and set up a surveillance position in an unmarked van to view the transaction. Additional police officers also assumed positions around the perimeter of the area so as to be able to follow the defendant when he departed the location of the drug buy.

Arnold and Whitacre each testified that defendant King eventually drove to the predetermined spot in an older model "orange-ish, brownish" sedan. Arnold entered that vehicle, paid the defendant $760, and received in exchange ten dollars change and a bag containing 30.8 grams of crack cocaine. After the seller drove away from the area, Arnold, who had remained in Whitacre's sight throughout the transaction, returned to the van and gave the detective the drugs and the change he had received from King. Whitacre alerted his fellow officers when the "orange-ish, brownish" car left the area and those other officers took turns following the car, maintaining visual contact with it until stopping it and asking for the driver's identification. The officer who made the traffic stop identified King in court as the driver and sole occupant of the vehicle, stated that King offered him a driver's license issued to "Jason King," and further testified that a check on the vehicle's temporary tags indicated that the owner of the vehicle was the defendant, Jason King. After obtaining that information, the officer permitted King to proceed on his way without issuing a ticket or other citation.

On July 19, 2005, Arnold again contacted King by phone and agreed to meet him once more at the location of the prior drug transaction in order to purchase another ounce of crack cocaine, this time for $700. The informant then contacted Detective Whitacre before the defendant's arrival, underwent another search of his clothes and person by Whitacre, and again was directed to remain in sight of the van parked across the street, from which the detective would be observing the proceedings. For this second transaction, backup police officers parked in a different vehicle approximately 200 feet away from the van and operated a hidden video camera in an effort to record any illegal activities.

When the defendant arrived to meet with Arnold, King was seated in the front passenger seat of a teal-colored Honda driven by an unidentified woman. Arnold nevertheless stepped into the back seat of the car, gave the defendant the money provided by Whitacre, "and got another ounce" of crack cocaine from "Jason" in exchange. Although the videotape filmed from the hidden location admittedly never showed the informant's hands and never showed the defendant reaching into the backseat to hand illegal drugs to Arnold, Detective Whitacre, who observed the exchange from a different, much closer vantage point, testified unequivocally, "I saw Mr. Arnold hand money through the front, through the middle of the front seats. And then I saw Mr. King pass what looked to be a bag or small object to the back seat."

At the conclusion of the transaction, Arnold exited the Honda and returned to Whitacre's van to transfer the purchased drugs to the detective. Stipulated testimony at

trial indicated that the crack cocaine obtained in this second transaction between Arnold and King weighed 27.2 grams. Nevertheless, neither Whitacre nor any of the backup officers in the area at the time followed the Honda or attempted to stop the defendant and the driver. According to Whitacre, he did not request any such action "[b]ecause I knew who Mr. King was. I expected to see Mr. King in the future in the same manner . . . ."

Based upon this testimony, the jury concluded that King was guilty of distributing at least five grams of crack cocaine both on June 1, 2005, and on July 19, 2005. The district court denied the defendant's motion for judgment of acquittal that it had held under consideration pending the jury's verdict and sentenced King to concurrent prison terms of 120 months.

The defendant's appellate challenge to the sufficiency of the convicting evidence focuses in large part upon his contention that Martavious Arnold's testimony was not worthy of belief because of the witness's incentive to assist the prosecution in exchange for leniency in sentencing in another criminal matter. As we noted in Adamo, however:

> [A]ttacks on witness credibility are simply challenges to the *quality* of the government's evidence and not to the sufficiency of the evidence. Such attacks make for effective closing arguments on behalf of a defendant, but are irrelevant with regard to the Rule 29 insufficiency standard. Evidence may be held insufficient, therefore warranting taking the case from the jury, only if the government's case lacks evidence in support of one or more elements of the offense charged.

Id. at 935.

Furthermore, the defendant's assertion that Arnold's testimony was not sufficiently corroborated cannot afford him the relief he seeks. First, as we have consistently recognized, "[t]he uncorroborated testimony of an accomplice alone may support a conviction" under federal law. United States v. Clark, 18 F.3d 1337, 1343 (6th Cir. 1994). In this case, the jury obviously credited the informant's testimony that he was a long-time acquaintance of the defendant and that he consummated two transactions with King, each involving an amount of crack cocaine in excess of five grams.

Second, even if we were to require corroboration of accomplice testimony in order to sustain a jury verdict, such supporting evidence is present in this record. Although King argues that no testimony, other than Arnold's, necessarily ties him to the June 1, 2005, drug transaction, Columbus police officers stated under oath that they took turns following the vehicle involved in the drug deal, that they never lost sight of the vehicle, that no one exited or entered the vehicle after it left from the site of the sale, and that when the vehicle was finally stopped, the defendant was found to be the sole occupant of the automobile. Furthermore, the driver of the car produced a driver's license identifying him as Jason King, and a computer check of the temporary tag affixed to the vehicle indicated that the car had been registered to the defendant. From this evidence, and all reasonable inferences that might be drawn from it, a rational trier of fact could have concluded beyond a reasonable doubt that Jason King was indeed the individual who sold crack cocaine to Martavious Arnold on June 1, 2005.

Likewise, even though the police chose not to follow and apprehend the occupants of the car in which the July 19, 2005, drug transaction took place, sufficient evidence -- other than Arnold's own testimony -- tied the defendant to that second crack cocaine sale. Indeed, although King focuses on the fact that the video of the drug deal apparently fails to record the defendant himself either accepting money from Arnold or passing the crack cocaine to the informant, he ignores the testimony of Detective Whitacre that the officer, from a vantage point better than that of the camera operator, clearly observed not only Arnold handing money to King, but also King passing "what looked to be a bag or small object to the back seat." In light of that testimony, a rational trier of fact could find beyond a reasonable doubt that the defendant was guilty of the July 19, 2005, crime charged in count two of the federal indictment against King.

The sole issue raised on appeal by Jason King is thus without factual and legal merit. We therefore AFFIRM the judgment of the district court in this matter.