*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 10a0272p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
                              *Plaintiff-Appellee,*

           *v.*

ROBERT WETTSTAIN (No. 08-5707) and JOHN
EDWARD STEWART (No. 08-5708),
                              *Defendants-Appellants.*

Nos. 08-5707/5708

>

Appeal from the United States District Court
for the Western District of Kentucky at Owensboro.
Nos. 07-00010-001; 07-00010-002—Joseph H. McKinley, Jr., District Judge.

Argued: June 10, 2010

Decided and Filed: August 30, 2010

Before: MARTIN and GRIFFIN, Circuit Judges; DUGGAN, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Shawn P. Hooks, HOLZFASTER, CECIL, McKNIGHT & MUES, Dayton, Ohio, Michael R. Mazzoli, COX & MAZZOLI PLLC, Louisville, Kentucky, for Appellants. Monica Wheatley, ASSISTANT UNITED STATES ATTORNEY, Louisville, Kentucky, for Appellee. **ON BRIEF:** Shawn P. Hooks, HOLZFASTER, CECIL, McKNIGHT & MUES, Dayton, Ohio, Michael R. Mazzoli, COX & MAZZOLI PLLC, Louisville, Kentucky, for Appellants. Monica Wheatley, Terry M. Cushing, ASSISTANT UNITED STATES ATTORNEYS, Louisville, Kentucky, for Appellee.

---

[*]The Honorable Patrick J. Duggan, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

————————————

**OPINION**

————————————

GRIFFIN, Circuit Judge. Defendants Robert Wettstain and John Edward Stewart appeal their convictions and sentences following a three-day jury trial. For the reasons explained below, we affirm Stewart's and Wettstain's convictions and their mandatory minimum life sentences imposed on Count I. We reverse and remand for resentencing Wettstain's life sentences on Counts III and IV and Stewart's life sentences on Counts II and IV.

I.

On May 8, 2007, a federal grand jury returned a five-count indictment against John Edward Stewart, Robert Wettstain, Jerry Richardson, and Wesley Higdon for their involvement in a large- scale methamphetamine drug distribution ring in Daviess County, Kentucky. Three months before Higdon's trial date, he plead guilty to Counts I, II, and IV of the indictment and agreed to cooperate with the government. Four days before his trial, Jerry Richardson plead guilty to Counts I and III of the indictment and also agreed to cooperate with the government.

On December 17, 2007, the district court convened Stewart's and Wettstain's trial. Higdon was the government's star witness, offering extensive testimony regarding Stewart's and Wettstain's drug operation. Richardson testified about Wettstain's copious methamphetamine dealing. The government also provided five non-cooperating witnesses: Jennifer Brey (Wettstain's former girlfriend and wife); Carl Daugherty (one of Stewart's methamphetamine dealers); Misty Roberts (Jerry Richardson's fiancée); James C. Stewart (Jerry Richardson's cousin); and T.G. Gossett (a close friend of Jerry Richardson). Each witness provided testimony regarding Stewart's and Wettstain's methamphetamine drug ring, which involved "fronting" large amounts of methamphetamine to dealers like Daugherty, Higdon, and Richardson for distribution

in Daviess County.  The dealers would then pay Stewart or Wettstain for the "fronted" methamphetamine with the proceeds they received from drug sales.

On December 20, 2007, the jury returned guilty verdicts against:  (1) Stewart and Wettstain on Count I, conspiracy to possess with the intent to distribute 500 grams or more of a mixture containing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846; (2) Stewart and Wettstain on Count IV, aiding and abetting each other in the possession with the intent to distribute an unspecified amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; (3) Stewart on Count II for aiding and abetting Higdon of possession with the intent to distribute fifty grams or more of a mixture containing methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and (4) Wettstain on Count III for aiding and abetting Richardson of possession with the intent to distribute an unspecified amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

Stewart's presentence report ("PSR") assessed his base offense level at 32, U.S.S.G. § 2D1.1(c)(4) (2007), "Offenses Involving Drugs – Unlawful . . . Trafficking[,]" and calculated his criminal history as a category VI based on 19 criminal history points, yielding an advisory Guidelines range of 210 – 262 months of imprisonment.  *See* U.S.S.G. ch. 5, pt. A (Sentencing Table) (2007).

Wettstain's PSR also assessed his base offense level at 32, U.S.S.G. § 2D1.1(c)(4) (2007), "Offenses Involving Drugs – Unlawful . . . Trafficking[,]" and calculated his criminal history as a category VI based on 22 criminal history points, also yielding an advisory Guidelines range of 210 – 262 months of imprisonment.  *See* U.S.S.G. ch. 5, pt. A (Sentencing Table) (2007).  However, Wettstain's PSR recommended applying U.S.S.G. § 4B1.1 (2007), the Career Offender enhancement, because he was at least 18 years of age at the time he committed the present offenses and he had at least two previous felony convictions for a controlled substance offense or a crime of violence.  § 4B1.1 (a).  Based on § 4B1.1, Wettstain's total offense level was 37 and his criminal history category remained at VI, *see* § 4B1.1(b), yielding an advisory

Guidelines range of 360 months to life imprisonment.  *See* U.S.S.G. ch. 5, pt. A (Sentencing Table) (2007).

The government objected to these sentencing recommendations because it had timely filed notices of intent to rely on Stewart's and Wettstain's previous felony drug convictions to enhance their minimum sentences to life imprisonment on Count I.  *See* 21 U.S.C. § 841(b)(1)(A)(viii); 21 U.S.C. § 851 (2007).  In response to the government's objections, the PSRs were revised to recommend mandatory minimum life sentences for Stewart and Wettstain on all counts of conviction.  Defense counsel did not object.

On May 15, 2008, Stewart and Wettstain were sentenced.  The district court adopted the revised PSR recommendations and sentenced Stewart to concurrent life sentences on Counts I, II, and IV and Wettstain to concurrent life sentences on Counts I, III, and IV.

Defendants timely appeal their convictions and sentences.

II.

We begin our analysis, as we must, with the sufficiency of the evidence.  "[A]n appellate court's reversal for insufficiency of the evidence is in effect a determination that the government's case against the defendant was so lacking that the trial court should have entered a judgment of acquittal, rather than submitting the case to the jury." *Lockhart v. Nelson*, 488 U.S. 33, 39 (1988).  Because the Double Jeopardy Clause affords a defendant who obtains a judgment of acquittal absolute immunity from further prosecution for the same crime, the Supreme Court has stated that "it ought to do the same for the defendant who obtains an appellate determination that the district court *should* have entered a judgment of acquittal." *Id.*

Accordingly, defendants bear a heavy burden when asserting insufficiency of the evidence arguments.  *United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *Id.* (citation and internal quotation marks omitted).  Furthermore, we have held consistently that "'[t]he

uncorroborated testimony of an accomplice alone may support a conviction."' *United States v. King*, 288 F. App'x 253, 256 (6th Cir. 2008) (unpublished) (quoting *United States v. Clark*, 18 F.3d 1337, 1343 (6th Cir. 1994)).

We review de novo the district court's denial of a motion for judgment of acquittal pursuant to Fed. R. Crim. P. 29[1] and assess the evidence "in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008). "We will reverse a judgment based on a finding of insufficient evidence only if the judgment is not supported by substantial and competent evidence upon the record as a whole." *Id.* Further, we have a duty to make all reasonable inferences in support of the jury's verdict. *Id.* In accordance with these principles, we turn to Wettstain's and Stewart's sufficiency-of-the-evidence arguments.

### *Count I*

Wettstain and Stewart argue that the evidence adduced at trial was insufficient to establish the existence of a conspiracy to possess with the intent to distribute 500 grams or more of a mixture containing methamphetamine between February 2004 and February 2007.[2] To demonstrate a conspiracy under 21 U.S.C. §§ 841(a)(1) and 846, the government must prove, beyond a reasonable doubt: "(1) an agreement to violate drug laws, (2) knowledge and intent to join the conspiracy, and (3) participation in the conspiracy." *United States v. Gibbs*, 182 F.3d 408, 420 (6th Cir. 1999) (citation and internal quotation marks omitted).

Wettstain argues that the government failed to prove the element of agreement. We disagree. Higdon, a co-conspirator and cooperating witness, testified that beginning in December 2006, Stewart "fronted" large amounts of methamphetamine to Wettstain and Higdon. The two men would sell it to others and pay Stewart with the profits.

---

[1]Rule 29(a) provides, in relevant part: "After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."

[2]Defendants do not challenge the jury's verdict regarding the drug quantity.

Higdon also reported that Stewart provided a "discount" on "bulk purchases of methamphetamine" – "[a]nything under six ounces, I was paying [$]2000 an ounce. . . . and then [$]1900 an ounce for six ounces or more[,] and then [$]18[00] at ten [ounces]." Higdon stated that he and Wettstain would travel to Stewart's home "every couple of weeks or every week. . . . [t]o receive methamphetamine[]."

Higdon testified that, on January 11, 2007, he witnessed Wettstain receive a phone call from Stewart. Stewart instructed Wettstain to travel to a house and pick up eight ounces of methamphetamine that he had left "in a bag inside of a little bucket." Wettstain and Higdon traveled to the house together and retrieved the drugs from the bucket. The next day, Wettstain fronted two of the eight ounces of methamphetamine to Higdon.

Higdon also testified that, on January 13, 2007, Wettstain called him "in a hurry" because Wettstain owed Stewart money for the methamphetamine and wanted Higdon's payment for the two ounces he had fronted to him the day before so he could pay Stewart. Higdon testified that from August 2006, when he was released from prison, until he was re-arrested in January 2007, Stewart fronted him approximately six ounces of methamphetamine and Wettstain fronted him "at least [] 10 or 12 ounces."

Nonetheless, Wettstain maintains that "the only evidence of an[] agreement between [] [he] and [] Stewart was tacit[.]" However, "[a] tacit or mutual understanding among the parties is sufficient" to establish a conspiratorial agreement. *United States v. Forrest*, 17 F.3d 916, 918 (6th Cir. 1994). No "formal agreement" is required. *United States v. Sanchez*, 928 F.2d 1450, 1457 (6th Cir. 1991).

> Once a conspiracy is shown, evidence connecting a particular defendant to the conspiracy "need only be slight." The defendant "need not be an active participant in every phase of the conspiracy, so long as he is a party to the general conspiratorial agreement." A buyer/seller relationship alone is not enough to establish participation in the conspiracy, but further evidence indicating knowledge of and participation in the conspiracy can be enough to link the defendant to the conspiracy.

*Gibbs*, 182 F.3d at 421-22 (internal citation removed).

We have previously recognized "that the 'trust' involved in 'fronting' drugs under a delayed payment or credit arrangement 'suggests more than a buyer-seller arrangement between the parties.'" *United States v. Henley*, 360 F.3d 509, 514 (6th Cir. 2004) (citation omitted). According to Higdon's testimony, Stewart frequently fronted methamphetamine to Wettstain under a delayed-payment arrangement, including the methamphetamine Wettstain acquired from Stewart on January 11, 2007. Moreover, "[a] jury may infer that a defendant had the intent to distribute drugs from circumstantial evidence of the possession of large quantities of drugs." *United States v. Young*, 243 F. App'x 105, 106 (6th Cir. 2007) (unpublished) (citing *United States v. Faymore*, 736 F.2d 328, 333 (6th Cir. 1984)). As the D.C. Circuit has accurately observed, "[a] person can be found guilty on a theory of conspiracy, aiding and abetting, or constructive possession without ever having touched the drugs at issue." *United States v. Curry*, 494 F.3d 1124, 1128 (D.C. Cir. 2007).

Wettstain and Stewart attack Higdon's credibility because he was a cooperating witness. However, "[s]ufficiency-of-the-evidence appeals are no place . . . for arguments regarding a government witness's lack of credibility." *United States v. Hernandez*, 227 F.3d 686, 694 (6th Cir. 2000) (citations and internal quotation marks omitted). "This Court has repeatedly held that a juror is free to weigh the testimony of a co-conspirator who pleads guilty and testifies pursuant to a cooperation agreement with the United States." *United States v. Fonseca*, 193 F. App'x 483, 491 (6th Cir. 2006) (unpublished) (citing *Hernandez*, 227 F.3d at 694). Thus, Higdon's credibility, or lack thereof, is not a proper issue for our consideration, and his uncorroborated testimony alone can support Wettstain's and Stewart's convictions. *United States v. King*, 288 F. App'x 253, 256 (6th Cir. 2008) (unpublished) (citing *United States v. Clark*, 18 F.3d 1337, 1343 (6th Cir. 1994).

For these reasons, we hold that there was sufficient evidence from which a rational trier of fact could determine that Wettstain and Stewart were involved in a conspiracy to possess with the intent to distribute 500 grams or more of a mixture

containing methamphetamine between February 2004 and February 2007. Accordingly, we affirm their convictions on Count I.

*Count IV*

Wettstain and Stewart also challenge the sufficiency of the evidence to support their convictions on Count IV, specifically, that on or about January 11, 2007, Stewart, Wettstain, and Higdon, aided and abetted by each other, knowingly and intentionally possessed with the intent to distribute an unspecified amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1).[3]

To demonstrate possession with the intent to distribute a controlled substance under § 841(a)(1), the government must prove, beyond a reasonable doubt, that: (1) the defendants knowingly, (2) possessed a controlled substance, (3) with the intent to distribute. *United States v. Coffee*, 434 F.3d 887, 897 (6th Cir. 2006). Higdon's testimony established that Stewart arranged for Wettstain and Higdon to pick up eight ounces of methamphetamine on January 11, 2007, and that they located the methamphetamine based on Stewart's instructions.

> The government can base a conviction under § 841(a)(1) upon a showing of either actual or constructive possession. *See United States v. Hill*, 142 F.3d 305, 312 (6th Cir.), *cert. denied*, 119 S. Ct. 225 (1998). "Constructive possession requires evidence supporting the conclusion that the defendant had the ability to exercise knowing 'dominion and control' over the items in question." *United States v. Morris*, 977 F.2d 617, 619 (D.C. Cir. 1992) (internal citation omitted). . . . A jury may also find the intent to distribute drugs from the large quantity involved. *See, e.g., United States v. Faymore*, 736 F.2d 328, 333 (6th Cir.), *cert. denied*, 469 U.S. 868 (1984).

*United States v. Perkins*, No. 98-1640, 1999 WL 777537, at *2 (6th Cir. Sept. 16, 1999) (unpublished).

---

[3]Defendants do not assert a sufficiency of the evidence argument regarding their convictions for aiding and abetting, 18 U.S.C. § 2, in Counts II-IV of the indictment.

Accordingly, the fact that Stewart was not physically present at the January 11, 2007, transaction is of no moment. The jury presumptively credited Higdon's testimony that he witnessed Wettstain receive a phone call from Stewart, in which Stewart told Wettstain to retrieve the drugs from a specific address, "in a bag inside of a little bucket." Wettstain and Higdon traveled together to the house and acquired the drugs. Thus, a rational juror could determine that Stewart constructively possessed the methamphetamine because he had the ability to exercise "dominion[] or control" over the bucket and its illegal contents. *United States v. Russell*, 595 F.3d 633, 645 (6th Cir. 2010). The jury could have also inferred that Stewart and Wettstain had the intent to distribute the methamphetamine because of the large quantity involved in the transaction. *Faymore*, 736 F.2d at 333.

Wettstain also asserts that the district court should have granted his motion for acquittal on Count IV because "there was no evidence of a specific amount of [pure] methamphetamine in evidence [as opposed to a *mixture* of methamphetamine]" and that the district court improperly allowed the government "to amend its charges[.]" (Emphasis added.) Wettstain essentially argues that the type of controlled substance referenced in the indictment is an element of the offense.[4] We disagree.

The settled law of our circuit is, "in regard to 21 U.S.C. § 841, section (a) describes the substantive offense, and section (b), imposing mandatory minimum sentences based on the quantity of drugs involved, is a penalty provision only and does not constitute an element of the offense to be determined by the [finder of fact]." *United States v. Cox*, 565 F.3d 1013, 1016-17 (6th Cir. 2009) (quoting *United States v. Jinadu*, 98 F.3d 239, 247 (6th Cir. 1996)). As we explained in *United States v. Garcia*, 252 F.3d 838 (6th Cir. 2001), drug type and quantity are irrelevant to the mens rea element of a section 841(a) offense, which requires nothing more than a defendant's specific intent to possess or distribute a controlled substance. *Id.*; *United States v. Gunter*, 551 F.3d

---

[4]Wettstain also advances this argument regarding his conviction on Count III of the indictment, which uses the term "methamphetamine" instead of "a mixture of a substance containing methamphetamine." At the motion for acquittal hearing, Stewart joined Wettstain's argument as to Count IV. Because their arguments are essentially the same, we consider them contemporaneously.

472, 484-85 (6th Cir. 2009); *see also United States v. Baker*, 432 F.3d 1189, 1233 (6th Cir. 2005) ("[B]ecause the specific amount and type of drugs are not elements of the offense, the government's failure to prove the amount or type charged in the indictment does not merit reversal").

Accordingly, we conclude that there was sufficient evidence from which a rational trier of fact could determine that Wettstain and Stewart aided and abetted each other to knowingly and intentionally possess with the intent to distribute an unspecified amount of methamphetamine. We affirm defendants' convictions on Count IV.

### *Count II*

Stewart also challenges the sufficiency of the evidence to support his conviction on Count II, specifically, that on or about April 25, 2004, Stewart and Higdon, aided and abetted by each other, knowingly and intentionally possessed with the intent to distribute fifty grams or more of a mixture of methamphetamine in violation of 21 U.S.C. § 841(a)(1). As we have stated previously, to sustain this conviction, the government must prove that: (1) the defendants knowingly, (2) possessed a controlled substance, (3) with the intent to distribute. *Coffee*, 434 F.3d at 897.

Stewart argues that the lack of drugs and money seized from his person at the time of his arrest undermines the jury's verdict. However, "[c]ircumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *Spearman*, 186 F.3d at 746 (citation and internal quotation marks omitted). In this regard, Higdon testified that between February 2004 and May 2004, Stewart fronted "[m]ore than 20 ounces" of methamphetamine to Higdon. The jury could reasonably infer that Stewart possessed the requisite intent to distribute fifty grams or more of a mixture of methamphetamine because of the large quantities involved in his transactions with Higdon. *See Faymore*, 736 F.2d at 333.

Thus, we hold that there was sufficient evidence from which a rational trier of fact could determine that Stewart knowingly and intentionally possessed with the intent to distribute methamphetamine and affirm his conviction on Count II.

*Count III*

Wettstain also challenges the sufficiency of the evidence to support his conviction on Count III, specifically, that on or about December 17, 2006, Wettstain and Jerry Richardson, aided and abetted by each other, knowingly and intentionally possessed with intent to distribute an unspecified amount of methamphetamine. Again, the elements of a charge of possession with intent to distribute methamphetamine are: (1) the defendants knowingly, (2) possessed a controlled substance, (3) with the intent to distribute. *Coffee*, 434 F.3d at 897.

Richardson testified that he bought "[o]ne to two ounces" of methamphetamine "[a] few times a week, two or three, sometimes maybe four times a week" directly from Wettstain. Based on the large quantities of drugs involved in his transactions with Richardson, the jury could reasonably infer that Wettstain had the requisite intent to distribute. *Faymore*, 736 F.2d at 333. Wettstain also attacks Jerry Richardson's credibility for the same reason Stewart and Wettstain challenge Higdon's credibility – his cooperation with the government. "Sufficiency-of-the-evidence appeals are no place . . . for arguments regarding a government witness's lack of credibility." *Hernandez*, 227 F.3d at 694. "This Court has repeatedly held that a juror is free to weigh the testimony of a co-conspirator who pleads guilty and testifies pursuant to a cooperation agreement with the United States." *Fonseca*, 193 F. App'x at 491 (citing *Hernandez*, 227 F.3d at 694).

For these reasons, we hold that there was sufficient evidence from which a rational trier of fact could determine that Wettstain knowingly and intentionally possessed with the intent to distribute an unspecified amount of methamphetamine. Accordingly, we affirm his conviction on Count III.

III.

Next, Wettstain and Stewart argue that the district court abused its discretion in denying (1) their motion for a mistrial based upon alleged prosecutorial misconduct; and (2) their renewed motion for a new trial based upon a juror letter impeaching the verdict. We disagree.

A.

We review for abuse of discretion the district court's denial of Wettstain's and Stewart's motion for a mistrial based on prosecutorial misconduct. *United States v. Wall*, 130 F.3d 739, 745 (6th Cir. 1997). Defendants jointly argue that they are entitled to a new trial because the prosecutor improperly appealed to the jury's "community conscience" during his closing argument. The government responds that the prosecutor's comments were not improper, and, even if they were improper, they were not flagrant. When analyzing a claim of prosecutorial misconduct, "the relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation and internal quotation marks omitted).

Stewart and Wettstain objected to the following statements made by the prosecutor at the beginning of his closing argument:

> You folks are the conscience of the community. You are the representatives of this community, and you know that there's a plague on the community, which is methamphetamine. Now, you know that at the center of this epidemic are these two monsters, Mr. Stewart and Mr. Wettstain, because they've been peddling methamphetamine all over your community for at least – for most of the last 10 years.

After the objection, the district court conducted a short side-bar conference, and defense counsel asked for a curative instruction to the jury. The district court immediately provided one, stating:

> THE COURT: Ladies and gentlemen, your job in this case is not to solve the drug problem in this community. It's an improper argument to make. Your job is to decide the evidence in this case and decide whether these

people are guilty or not guilty of the crimes charged.  So I want you to disregard any evidence – or any argument to the contrary made by [the prosecutor].

[COUNSEL FOR THE GOVERNMENT]: Thank you, your Honor. I apologize, ladies and gentlemen.

Once the jury returned their verdicts, Wettstain and Stewart moved again for a mistrial.  The district court denied their motion, ruling that the prosecutor's statements were not improper because he did not "urge[] the jury to send a message to all drug dealers in the community by convicting the defendant."  The district judge ruled that "even if the government's remarks were improper" his "admonition 'sufficiently diluted or eradicated any resulting prejudice'" because he had given "an immediate and firm curative instruction explaining why the statement by the government should have no effect on the jury's deliberations."  (quoting *United States v. Solivan*, 937 F.2d 1146, 1156 (6th Cir. 1991)).

In *United States v. Beasley*, 583 F.3d 384, 392-93 (6th Cir. 2009), we explained the proper analysis for evaluating motions for mistrial based upon alleged prosecutorial misconduct:

> Our two-part test for determining whether prosecutorial misconduct warrants a mistrial requires us to examine (1) whether the prosecutor's remarks were improper and, if so, (2) whether they were flagrant. *Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002). "[I]mproper remarks that are flagrant amount to *per se* reversible error; improper remarks that are not flagrant may amount to reversible error in certain circumstances." *United States v. Hargrove*, 416 F.3d 486, 493 (6th Cir. 2005). "To determine the flagrancy of the prosecutor's remarks, we look at (1) whether the statements tended to mislead the jury and prejudice the defendant; (2) whether the statements were isolated or pervasive; (3) whether the statements were deliberately placed before the jury; and (4) whether the evidence against the accused is otherwise strong." *White*, 563 F.3d at 193 (citations omitted).

Here, defendants assert that the prosecutor's appeal to the jury's "community conscience" closely resembles the following improper statements made by the prosecutor in *Solivan* which resulted in a remand for a new trial:

What you're listening to is a wholesale distributor of narcotics, cocaine discuss her business affairs and complain about her busy schedule, the lack of good product and the trouble she's having getting this stuff up here now. And I'd submit to you, folks, that she's been caught now. And I'm asking you to tell her and all of the other drug dealers like her – (defense counsel's objection and Court's response omitted) – [t]hat we don't want that stuff in Northern Kentucky and that anybody who brings that stuff in Northern Kentucky[.]

937 F.2d at 1148 (emphasis removed). In *Solivan*, the prosecutor repeatedly referred to the "War on Drugs," a popular topic at the time of the defendant's trial. *Id.* at 1153. In finding error, we concluded that the prosecutor's "statements were deliberately injected into the proceedings to inflame the jurors' emotions and fears associated with the current drug epidemic that is reported daily in our newspapers and which threatens the very fabric of our society." *Id.* at 1157; *cf. Hicks v. Collins*, 384 F.3d 204, 219 (6th Cir. 2004) (a prosecutor may appeal to the jury's general duty to convict the guilty but may not appeal to the jury's fears or prejudices).

In the present case, the prosecutor's remarks were not as benign as in *Hicks,* and, like *Solivan*, were inflammatory. Here, the prosecutor appealed to the jury by characterizing the community's drug problem as a "plague" and "an epidemic[,]" at the center of which were Stewart and Wettstain, whom the prosecutor labeled as "monsters." These statements appealed to jurors' fears, not to their reasoned judgment. For these reasons, we conclude that the prosecutor's remarks were improper.

However, we also hold that the statements were not flagrant. First, unlike *Solivan*, the prosecutor's statements were isolated. Second, the prosecutor thought his remarks were proper, thereby demonstrating that he did not intend to mislead the jury or prejudice defendants. Third, the "community conscience" statement did not mislead the jury because it did not marshal them to punish all the drug dealers in their community by convicting Stewart and Wettstain; rather, the comment accurately identified Wettstain and Stewart as drug dealers who lived and peddled methamphetamine in their community. Finally, the testimonial evidence against Wettstain and Stewart was otherwise strong.

We reverse for improper, but non-flagrant, prosecutorial misconduct only where: "(1) the proof against the defendant was not overwhelming; (2) opposing counsel objected to the conduct; and (3) the district court failed to give a curative instruction." *United States v. Brown*, 66 F.3d 124, 127 (6th Cir. 1995); *United States v. Carroll*, 26 F.3d 1380, 1384-87 (6th Cir. 1994) (same). Here, the district court gave an immediate, strong, and proper curative instruction, advising the jury that the objectionable statement was "an improper argument to make" and that the jury's "job in this case [was] not to solve the drug problem in th[eir] community" but "to decide the evidence in th[e] case" – "whether these [defendants were] guilty or not guilty of the crimes charged." The district court also advised the jury to "disregard any evidence – or any argument to the contrary made by [the prosecutor]."

We "presume that the jury followed the court's instructions on the law." *Beasley*, 583 F.3d at 394 (citing *Washington v. Hofbauer*, 228 F.3d 689, 706 (6th Cir. 2000)). Thus, under these circumstances, Wettstain's and Stewart's arguments for reversal fail.

Defendants also argue that the following additional statements made by the prosecutor warrant a remand for a new trial:

- Mr. Wettstain and Mr. Stewart have been peddling misery and spreading misery to other addicts in this community for some period of time going back to what would be '98, according to Jennifer Bray [sic]. It's high time they're held accountable.

- These people, in closing, ladies and gentlemen, have peddled their dope all over this area. They've caused a whole lot of misery. . . . These folks are ruining a lot of people's lives with their dope dealing. Please hold them accountable.

Because neither defendant objected to these statements, we review them for plain error, only. *United States v. Davis*, 514 F.3d 596, 614-15 (6th Cir. 2008). While it is true that "[p]rosecutorial misconduct may be so exceptionally flagrant that it constitutes plain error[,]" *id.* at 614 (quoting *United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001), the statements at issue were isolated and not made with the intent to mislead the

jury.  Simply put, the unobjected-to statements are not "so exceptionally flagrant" as to constitute plain error.

For these reasons, the district court did not abuse its discretion in denying defendants' motions for a mistrial based on prosecutorial misconduct.

B.

Wettstain and Stewart also argue that the district court improperly denied their motion for a new trial based upon a letter it received from an empaneled juror.  We review the district court's decision to deny a motion for a new trial for abuse of discretion.  *United States v. Carson*, 560 F.3d 566, 585 (6th Cir. 2009).

The juror's letter stated that he regretted voting for a guilty verdict because: (1) Wettstain and Stewart did not take the stand in their own defense, which "made them look guilty[,]" and he later realized that he should not have assumed this; (2) Stewart "was never found with anything"; and (3) the other jurors voted for a guilty verdict "simply [because they] wanted to hurry it up and get it over with."

The Supreme Court has long adhered to the rule that a juror is incompetent to impeach the verdict.  *See, e.g.*, *Mattox v. United States*, 146 U.S. 140, 149 (1892).  If this were not so, the Supreme Court has explained, "[j]urors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict." *McDonald v. Pless*, 238 U.S. 264, 267 (1915); *see United States v. Gonzales*, 227 F.3d 520, 525-26 (6th Cir. 2000).

Federal Rule of Evidence 606(b), entitled "Inquiry into validity of verdict or indictment[,]" codifies this rule and provides only three exceptions to it:

> (1) whether extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form. A juror's affidavit or evidence of any statement by the juror may not be received on a matter about which the juror would be precluded from testifying.

Because the juror's letter does not reference any exception recognized in Rule 606(b), the district court properly disregarded his statements. *See Gonzales*, 227 F.3d at 527 (holding that district court abused its discretion in granting a motion for a new trial based "on the wholly incompetent testimony of one juror . . . .").

IV.

Finally, Wettstain and Stewart argue that the district court abused its discretion when it imposed life sentences on all counts of their convictions. We agree, in part, and we reverse and remand for resentencing on Counts II – IV.

We review the district court's sentencing decisions for reasonableness under an abuse-of-discretion standard. *United States v. Bates*, 552 F.3d 472, 476 (6th Cir. 2009) (citing *Gall v. United States*, 522 U.S. 38, 46 (2007)); *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007). Reasonableness review has both a procedural and a substantive component. *United States v. Sedore*, 512 F.3d 819, 822 (6th Cir. 2008). We "must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence . . . ." *Gall*, 552 U.S. at 51. If the sentence is "procedurally sound," we "then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Id.* We apply a presumption of substantive reasonableness to sentences that fall within the applicable Guidelines range. *Sedore*, 512 F.3d at 823.

A.

Wettstain and Stewart assert that their mandatory minimum life sentences, imposed as a result of their convictions on Count I, are unconstitutional because they interfere with a district court's ability to consider the 18 U.S.C. § 3553(a) factors. However, it is well-settled that "[m]andatory minimum sentences, which limit a sentencing court's discretion with regard to § 3553(a) factors, are constitutional."

*United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009); *Harris v. United States*, 536 U.S. 545, 565-68 (2002). Simply put, the current law governing mandatory minimum sentences defeats this argument. In addition, because the district court correctly sentenced defendants pursuant to § 841(b)(1)(A)(viii) and 21 U.S.C. § 851, these statutes control over any conflicting Guidelines sentencing range. *United States v. Woods*, No. 07-6495, 2010 WL 697357, at n.5 (6th Cir. Mar. 1, 2010) (citing *United States v. Butler*, 207 F.3d 839, 850 (6th Cir. 2000)).

For these reasons, we affirm defendants' mandatory minimum life sentences on Count I.

### B.

The government concedes sentencing error on Counts III and IV because the jury did not find any specific drug quantity and therefore the corresponding statutory maximum sentence for these counts is thirty years. *See* 21 U.S.C. § 841(b)(1)(C) (2007).[5] *Apprendi* mandates that "'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" *United States v. Booker*, 543 U.S. 220, 227-28 (2005) (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)). Thus, Wettstain's and Stewart's life sentences on Counts III and IV are unlawful because they exceeded the statutory maximum sentence. *United States v. Penson,* 526 F.3d 331, 336 (6th Cir. 2008) (holding that when district court exceeds its statutory authority it pronounces an unlawful sentence).

However, the government asserts that we should apply plain-error review because Wettstain and Stewart failed to object following the district court's pronouncement of their sentences pursuant to *United States v. Bostic*, 371 F.3d 865, 873 (6th Cir. 2004). In *Bostic*, we held:

---

[5]"In the case of a controlled substance in schedule I or II . . . such person shall be sentenced to a term of imprisonment of not more than 20 years . . . . If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 30 years . . . ." 21 U.S.C. § 841(b)(1)(C) (2007).

> [D]istrict courts, after pronouncing the defendant's sentence but before adjourning the sentencing hearing, [must] ask the parties whether they have any objections to the sentence just pronounced that have not previously been raised. If the district court fails to provide the parties with this opportunity, they will not have forfeited their objections and thus will not be required to demonstrate plain error on appeal. If a party does not clearly articulate any objection and the grounds upon which the objection is based, when given this final opportunity [to] speak, then that party will have forfeited its opportunity to make any objections not previously raised and thus will face plain error review on appeal.

*Id.* at 872-73 (footnote omitted); *United States v. Vonner*, 516 F.3d 382, 385-86 (6th Cir. 2008) (applying *Bostic* rule to procedural-reasonableness claims). We have held that "[a] district court can satisfy the requirements of the *Bostic* rule only by clearly asking for objections to the sentence that have not been previously raised." *United States v. Thomas*, 498 F.3d 336, 340 (6th Cir. 2007) (quoting *United States v. Clark*, 469 F.3d 568, 570 (6th Cir. 2006)). In the present case, after pronouncing their life sentences on all counts, the district court simply asked Wettstain's and Stewart's counsel, "Anything else?"

In *Thomas*, we held that a substantially similar question, "Do you have anything further for the record, Mr. Canady?" did not satisfy *Bostic*. 498 F.3d at 340. Accordingly, contrary to the government's position, Wettstain's and Stewart's failure to raise an objection to their unlawful sentences does not confine defendants to plain error review. We have held previously that where a defendant's "sentence[ ] exceed[s] the statutory maximum sentence . . . we [] vacate the excessive sentence[ ] and remand for resentencing." *United States v. Sims*, 975 F.2d 1225, 1241 (6th Cir. 1992) (emphasis added). For these reasons, we vacate Stewart's life sentence on Count IV and Wettstain's life sentences on Counts III and IV and remand for resentencing.

C.

Finally, Stewart asserts that his life sentence on Count II is procedurally unreasonable because the district court felt improperly constrained by his mandatory life sentence on Count I. We have held that when presented with an allegation that the sentencing court misunderstands its authority, we will only remand based upon an

"indication of error in the record," not upon "mere conjecture" that the court felt improperly constrained.  *United States v. Guest*, 564 F.3d 777, 781 (6th Cir. 2009).

At the sentencing hearing, the district judge expressly stated that he would not have issued a life sentence "plain and simple" if he did not "feel compelled" to do so. *See* 21 U.S.C. § 841(b)(A)(iii).  The district court provided no other explanation for the sentence.  The mandatory minimum life sentence, however, was applicable to Count I, only.  Specifically, the jury's special verdict form convicted Stewart on Count II for possessing with the intent to distribute fifty grams or more of a mixture of methamphetamine in violation of 21 U.S.C. § 841(a)(1).  Thus, his penalty is governed by 21 U.S.C. § 841(b)(1)(B)(viii), which imposes a term of imprisonment of not less than ten years and not more than life upon one with a prior felony drug conviction.

Although the statutory *maximum* penalty under § 841(b)(1)(B)(viii) is life imprisonment, it appears from the record that the district judge felt bound by a mandatory minimum life sentence on all counts, including Count II.  Thus, we reverse Stewart's life sentence on Count II and remand for resentencing.[6]

V.

In conclusion, we affirm Stewart's and Wettstain's convictions.  Further, we affirm defendants' mandatory minimum life sentences imposed on Count I.  We reverse and remand for resentencing Wettstain's life sentences on Counts III and IV and Stewart's life sentences on Counts II and IV.

---

[6]The concurrent sentencing doctrine does not apply in the present case.  Count I's valid, mandatory life sentence does not cure the district court's sentencing errors on Counts II - IV.  Our decision regarding the sufficiency of the evidence on Count I is subject to further judicial review.  Thus, if another court were to vacate Stewart's or Wettstain's conviction on Count I, the unlawful sentences imposed on Counts II - IV would no longer be cured by the mandatory life sentence imposed on Count I. *See Dale v. Haeberlin*, 878 F.2d 930, 935 n.3 (6th Cir. 1989) (citing *United States v. Jeter*, 775 F.2d 670 (6th Cir. 1985).